WILLIAM S. MORROW *vs.* ARTHUR E. MOORE.

Somerset.    Opinion December 26, 1903.

*Contracts,* Sale of Real Estate.    *Stat. of Frauds,* Deed not delivered.    *Vendor and Purchaser,* Rights and Liabilities as to each other.    Rescission.
*Check,* Consideration.

A contract for the sale of real estate, wholly oral, does not become enforceable by reason of the fact that the vendor has signed a deed in accordance with the oral contract, so long as that deed remains in his possession or under his control; and it is equally under his control while it is in the possession of his attorney.  Nor does the signing of a deed of land agreed to be conveyed, and its being sent to the attorney of the person signing, constitute a memorandum in writing which will satisfy the statute of frauds.

Although the owner of real estate may have determined to sell his property at a certain price, he is under no obligation to communicate that fact to a prospective purchaser, but may obtain a larger price if the purchaser is willing to pay it.  Where there is no obligation upon a vendor to inform a purchaser of a fact, it is not a fraudulent concealment to withhold information in regard thereto.

*Held;* that the facts in this case do not disclose that the check in suit was obtained by the plaintiff by means of any fraudulent misrepresentations, or fraudulent concealments of material facts, and that the evidence shows a sufficient consideration for the check in suit.

On report.    Judgment for plaintiff.

This was an action of assumpsit to recover one hundred and eighty-nine dollars, the amount of a check given the plaintiff by the defendant on March 6th, 1902, as part of the purchase price of a piece of land situated in Madison, Somerset County, sold by the plaintiff to the defendant.

The defendant pleaded the general issue and a brief statement setting out that the check was obtained by deceit, concealment of material facts, and fraud, practiced on the defendant by the plaintiff.

The case is stated in the opinion.

*Forrest Goodwin,* for plaintiff.

*S. J. and L. L. Walton,* for defendant.

The check obtained by a designed concealment of the truth; by deceit and fraud practiced by the plaintiff upon the defendant.

What is the difference between stating to a party what is absolutely false at the time, or stating what is true at the time, then secretly doing what makes it untrue, and afterward by silence and evasive statements inducing the person to whom the statement was made to rely upon it, when at that time it has become, by the act of the deceiving party, absolutely untrue?

"He is guilty of a fraud who secretly changes a state of affairs, and then, without revealing this fact, procures another to do an act into which the true state of affairs enters as a motive." Bigelow on Fraud, p. 46; *Prentiss* v. *Russ,* 16 Maine, 30; *Baglehole* v. *Walters,* 3 Camp. 154; *Milliken* v. *Chapman,* 75 Maine, 306, 321; *Lewis* v. *Gamage,* 1 Pick. 346, 350; *Fay* v. *Winchester,* 4 Met. 513; *Kidney* v. *Stoddard,* 7 Met. 252; *Marcotte* v. *Allen,* 91 Maine, 74; *Short* v. *Currier,* 153 Mass. 182; 1 Story Eq. Jur. §§ 192, 217, and intervening sections, and cases cited.

There was no consideration for the check. It was given as inducement for plaintiff to do what had already been done. It was a promise founded on past consideration and therefore nudum pactum.

Whether in escrow or not, the deed was in Small's hands to be delivered to defendant upon payment of $3786. This direction was never countermanded. And defendant never consented to its being withdrawn. He simply gave the $189 check in order to obtain from plaintiff the execution and forwarding of the deed to Small. Plaintiff's promise to do this was the real consideration for the check. And as the deed had been already executed and sent to Small, and was then in Small's possession, by the familiar rule of law, this bygone transaction did not constitute a good and legal consideration for defendant's promise as evidenced in the check in suit. 1 Addison

on Contracts, 16; Bishop on Contracts, 90; *Greene* v. *Malden,* 10 Pick. 499; *Dodge* v. *Adams,* 19 Pick. 429; *Dearborn* v. *Bowman,* 3 Met. 155; *Sanderson* v. *Brown,* 57 Maine, 308, 313.

The check was additional compensation to plaintiff for carrying out his verbal contract. This he was under legal obligation to do. It was, therefore, no legal consideration. *Jennings* v. *Chase,* 10 Allen, 526, 527; *Wimer* v. *Worth Township,* 104 Penn. 317, 320.

Plaintiff's letter to Small constitutes a sufficient memorandum to satisfy the statute requirement. *Hurley* v. *Brown,* 98 Mass. 545; *Mead* v. *Parker,* 115 Mass. 413; *Giles* v. *Swift,* 170 Mass. 461; *Walker* v. *Walker,* 175 Mass. 349; Browne on Statute of Frauds, 5th ed. 482; *Spangler* v. *Danforth,* 65 Ill. 152; *Moss* v. *Atkinson,* 44 Cal. 3; *Owen* v. *Thomas,* 3 Mel. & Keene, 353; *Drury* v. *Young,* 58 Md. 546, 42 Am. Rep. 343.

Therefore, for the plaintiff's refusal to carry out the verbal contract defendant would have a claim against him for damages, so far as he had to pay more for the property.

SITTING: WISWELL, C. J., EMERY, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

WISWELL, C. J. Action of assumpsit upon a bank check given by the defendant to the plaintiff. The defense is a want of consideration, and that the check was obtained by the plaintiff by means of fraudulent misrepresentations and a fraudulent concealment of a material fact. The case comes to the law court upon a report of the evidence.

The check in suit was given as a part of the following transaction: The plaintiff, who lived in the State of Connecticut, owned real estate, consisting of a lot of land and the buildings thereon, in the village of Madison in this State; the defendant being desirous of purchasing this property, after some correspondence with the plaintiff, sent his father to Connecticut to see the plaintiff and negotiate for its purchase; the father went, saw the plaintiff, informed him of his errand, inquired the price of the property, and after various offers made by the one side and the other, they agreed upon a sale and purchase of the property for the sum of $3750, in addition to which the pur-

chaser was to pay the amount of an insurance premium recently paid by the plaintiff, making in all the sum of $3786. It was further agreed at the time that the plaintiff should have the deed drawn by Mr. Small, an attorney at Madison, sent to the plaintiff for the sig-. natures of himself and wife, and then returned to the attorney at Madison to be delivered by him to the defendant upon the payment of the purchase price; this method of carrying out the transaction being suggested and insisted upon by the plaintiff,—a matter of some importance as showing the position and relation of Mr. Small to the parties.

Shortly after this the plaintiff wrote two letters to Mr. Small, directing him to draft the deed, informing him of the purchase price, giving him certain instructions in regard to an existing lease upon a portion of the property, and saying that he should expect him to look out for his (the plaintiff's) interests in the matter. The deed was drafted by Mr. Small according to instructions and sent to the plaintiff for the signatures of himself and wife and for acknowledgment, but by that time the plaintiff had concluded not to sell the property at the price agreed upon and so informed the defendant by letter; thereupon the defendant started for Connecticut, saw the plaintiff and finally a new trade was concluded between them, whereby the defendant was to pay the sum of $3975 for the property. This amount was made up by calling the purchase price $4000 but an allowance of $25 was made to the defendant on account of his traveling expenses. Then and there the defendant gave the plaintiff the check in suit for $189 and agreed to pay the balance of $3786 to Mr. Small in Madison upon the delivery of the deed.

This was on March 6, 1902, but in the meantime, on March 4, 1902, the plaintiff had again changed his mind and concluded to carry out the first trade to sell for $3786, and had forwarded the deed, signed by himself and wife, and duly acknowledged, to the attorney in Madison with instructions to deliver the same upon the receipt of the above sum. The defendant left Madison for Connecticut upon the morning of March 5, the same day, but before this last letter from the plaintiff was received by Mr. Small, and without any knowledge of this letter. The defendant claims that he had no

knowledge of the fact that the plaintiff had concluded to carry out his first trade and to sell the property for the sum of $3786 until after the second trade was made and he had given his check for $189 in pursuance thereof, and that the plaintiff then. first informed him that he had already sent the deed to Mr. Small to be delivered upon the payment of the sum first agreed upon. After more or less controversy between the parties arising out of the information then, as he claims, first obtained, the defendant started for home, and while on the way directed payment upon this check to be stopped by a telegram to the bank upon which it was drawn.

But notwithstanding this, the defendant upon his return home carried out the trade for the purchase of the property by paying to Mr. Small the sum required, $3786, and by receiving delivery of the plaintiff's deed.

There is no great conflict in the testimony about these facts, except that the plaintiff claims that this information in regard to the deed having been sent to Mr. Small for delivery was given to the defendant before the check in suit was drawn by the plaintiff and given him. But we think that this conflict is immaterial and that it is not necessary to determine the issue of facts thus raised, because assuming that the defendant's position in that respect is the correct one, and that he had no knowledge of this fact until after the check had been given, it does not constitute a defense to this suit upon the check.

The first contract between the plaintiff and the defendant's father, acting for the latter, was wholly oral, and being for the sale of lands was not enforceable under our statute. The plaintiff had a legal right to refuse to carry out the terms of that unenforceable contract. It did not become enforceable against the plaintiff by his signing a deed, so long as that deed remained in his possession or under his control, and it was equally under his control while it was in the possession of his attorney. That Mr. Small, throughout the transaction, was and acted as the attorney for the plaintiff, and that the deed was not simply sent to him to be held in escrow until the performance of some condition, is clearly apparent from the evidence in the case. See *Day* v. *Lacasse*, 85 Maine, 242. So that the possession of the deed by the plaintiff's attorney was the possession of the plain-

tiff, and the deed was as fully subject to his control as if in his manual possession.

Nor do these facts, the signing of the deed by the plaintiff and its being sent by him to his attorney, constitute a sufficient memorandum in writing to take the contract out of the statute of frauds. It was still an unexecuted deed because undelivered and still in the possession and under the control of the grantor. *Day* v. *Lacasse,* supra.

When, on March 6, the defendant visited the plaintiff and they concluded a new contract for the sale of the property, there was no duty imposed upon the plaintiff to inform the defendant that he had previously concluded to sell for a less price, nor that he had already signed a deed for a smaller consideration, so long as that deed remained in his possession or subject to his control. Although he had determined to sell the property at a certain price, he had the right until he did sell or make a valid contract of sale, to get a larger price if a purchaser was willing to pay it. An owner of property may have determined to sell that property at a certain price, but he is under no obligation to communicate that fact to a prospective purchaser. So that as there was no duty upon the plaintiff to disclose these facts above referred to, it was not a fraudulent concealment to withhold this information. These were not material facts which he was bound to disclose to a person who was desirous of purchasing the property.

Moreover, the defendant after being in full possession of all of these facts completed the transaction to the extent of paying the remainder of the purchase price and by taking a deed of the property. If he had had sufficient cause to rescind the contract by reason of fraud upon the part of the plaintiff, he should have done so in whole, by refusing to take the deed, so that the plaintiff would have retained the title to his property. The law does not allow a partial rescission, whereby the party claiming the right to rescind can retain the beneficial part of a contract and refuse performance of his part.

> *Judgment for plaintiff for $189.00 and interest from March 10, 1902, the date of the presentation of the check and refusal of payment, and for protest fees.*