**Sumner RULON–MILLER, III**

v.

**Amory S. CARHART, Jr., et al.**

Supreme Judicial Court of Maine.

Argued June 14, 1988.

Decided July 28, 1988.

Bernard J. Kubetz (orally), William B., Devoe, Eaton, Peabody, Bradford & Veague, Bangor, for plaintiff.

William C. Knowles (orally), J. Gordon Scannell, Jr., Verrill & Dana, Portland, for defendants.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

McKUSICK, Chief Justice.

Defendants Amory S. Carhart, Jr., and Clarence Michalis, trustees of a testamentary trust, appeal from a Superior Court (Hancock County) judgment of January 29, 1988, ordering specific performance of an oral contract for the sale of real estate by the trust to plaintiff Sumner Rulon–Miller, III. We reject defendants' contentions that the Superior Court erred 1) when it found as a fact that the parties entered into an oral contract for the sale of the real estate and 2) when it held that the draft purchase and sale agreement signed by only one trustee and not delivered to plaintiff was in the circumstances of this case sufficient to satisfy the Statute of Frauds requirement of a written memorandum. Consequently, we affirm the Superior Court's judgment.[1]

---

1. We therefore have no occasion to reach plaintiff's cross-appeal from the Superior Court's rejection of his promissory estoppel claim.

## I.

In April 1985 the Knowles Company, a real estate brokerage firm, listed for sale Sand Point, a 13-acre property located on Somes Sound in Northeast Harbor owned by the trustees of a trust established under the will of Isadora Graves. The trustees were Amory Carhart, son of the decedent, and Clarence Michalis. The listed sale price was $750,000. Plaintiff Rulon–Miller was leasing Sand Point during the summer of 1985, and on July 8 of that year told a sales agent for the Knowles Company that he was willing to purchase Sand Point for $500,000. The agent telephoned Carhart, who rejected Rulon–Miller's offer as too low but stated that he would consider an offer for $650,000. The following day Rulon–Miller told the sales agent that he would pay the $650,000.

Rulon–Miller retained an attorney who negotiated with the attorney for the trust regarding the terms of payment and other details of a purchase and sale agreement. On July 23, 1985, Rulon–Miller signed the final draft of the purchase and sale agreement and sent a deposit check to the Knowles Company. He also sent the purchase and sale agreement he had signed to Carhart's attorney, who forwarded it to Carhart. Carhart signed the agreement and returned it to his attorney, who then forwarded it to Michalis, the other trustee. While the agreement was in transit to Michalis, Carhart received a cash-on-sale offer of $675,000 for Sand Point from Curtis and Patricia Blake. When Carhart informed Michalis of the higher offer, Michalis withheld his signature from the purchase and sale agreement. On July 31, 1985, Carhart's attorney told Rulon–Miller that Sand Point would be sold to the Blakes. Shortly thereafter, Rulon–Miller commenced the present action.

## II.

■ Defendants challenge the Superior Court's finding that the parties entered into an oral contract for the sale of Sand Point. Citing *Mississippi and Dominion S.S. Co., Ltd. v. Swift*, 86 Me. 248, 29 A. 1063 (1894), defendants argue that as a matter of law a court cannot find an oral contract exists when the parties continue to work out the details of a comprehensive written agreement. Defendants misread the *Swift* case, however. *Swift* did not set out a rule of law but rather expressly declared that "the question [whether the parties made an oral contract] is mainly one of intention," an issue of fact. *Id.* 86 Me. at 258, 29 A. at 1066. The Law Court in *Swift* was itself the factfinder and, on the basis of the evidentiary record before it on report, found as a fact that in the circumstances of that particular case the parties intended not to be bound until they had signed a final written contract. *Id.* 86 Me. at 261, 29 A. at 1068. In the case at bar the Superior Court and not this court is the factfinder. On the basis of the evidence before it, the Superior Court has found that the parties had a meeting of minds of all the essential terms of an unconditional oral contract for the sale of Sand Point. Nothing in *Swift* bars that finding of fact as a matter of law. We review that finding by a "clearly erroneous" standard, *see* M.R. Civ.P. 52(a), and having done so we find no error. The Superior Court heard detailed testimony from the parties and the real estate agent about their dealings relative to the Sand Point sale. From that evidence the court could rationally find that having settled on all the essential terms of the real estate sale the parties intended that they then and there had a "deal" free of any written formalization requirement of a final executed and delivered written contract to make it binding.

## III.

Even if the parties had orally agreed on the sale of Sand Point, that oral contract—defendants contend—is rendered unenforceable by the Statute of Frauds, 33 M.R.S.A. § 51 (1988). Defendants challenge the Superior Court's holding that the draft purchase and sale agreement constituted a sufficient memorandum to satisfy the Statute of Frauds, on two grounds: (1) that the draft agreement was signed by only one trustee, Carhart, and (2) that it was never delivered to Rulon–Miller. Both challenges fail.

■ The memorandum required to satisfy the Statute of Frauds must be "signed by the party to be charged therewith, or by some person thereunto lawfully authorized." *Id.; see also Williston on Contracts* §§ 585–587 (3d ed. 1961); 2 *Corbin on Contracts* §§ 520, 525 (1950). The Superior Court found as a fact that Carhart had both actual and apparent authority to deal with the Northeast Harbor real estate on behalf of both himself and his co-trustee, Michalis. That finding is amply supported by record evidence. The witnesses, who included Michalis himself, testified that Carhart acting alone made and carried out trust decisions relative to the real estate, including decisions on maintenance, leasing, sales listing, and rejection and acceptance of offers to purchase. Even if there were a question whether Carhart had actual authority to act for Michalis in selling the subject real estate, it is perfectly clear that the Superior Court could rationally conclude that Michalis's conduct would lead a third party to believe that Carhart was his agent in carrying out the trust responsibilities for the real estate. That is the essence of apparent authority. *See Twin Island Dev. Corp. v. Winchester*, 512 A.2d 319, 324–25 (Me.1986). Carhart's signature alone on the draft purchase and sale agreement was adequate to satisfy the Statute of Frauds.

■ We also reject defendants' contention that as a matter of law a memorandum to be sufficient to satisfy the Statute of Frauds must be delivered. Nothing in the language of the Maine statute imposes any such requirement, and the pertinent case authority in other jurisdictions is overwhelmingly to the contrary, as is accurately reported in the *Restatement (Second) of Contracts* § 133 comment b, at 346 (1980):

> There is no requirement that a memorandum be communicated or delivered to the other party to the contract, or even

that it be known to him or to anyone but the signer.

*See also* 4 *Williston on Contracts* § 579A; 2 *Corbin on Contracts* § 510. "The primary purpose of the statute is evidentiary, to require reliable evidence of the existence and terms of the contract...." *Restatement (Second) of Contracts* § 131 comment c, at 335. That purpose is served by the requirement of a memorandum signed by the party to be charged; delivery adds nothing to the achievement of that purpose. Thus, on the basis of the purpose of the memorandum, we accept the prevailing authority that no delivery is required for a signed memorandum to take an oral contract out of the Statute of Frauds. We overrule *Day v. Lacasse*, 85 Me. 242, 245, 27 A. 124, 125 (1892),[2] and *Morrow v. Moore*, 98 Me. 373, 378, 57 A. 81, 83 (1903), which held that a signed but undelivered deed could not constitute a Statute of Frauds memorandum of an oral contract to sell real estate.

In sum, defendants on appeal fail to show any clear error in the Superior Court's finding of an oral contract for the sale of Sand Point to Rulon–Miller or any error of law in the court's holding that the draft purchase and sale agreement signed by only Carhart, even though undelivered, took the oral contract out of the Statute of Frauds.

The entry is:

Judgment affirmed.

All concur.

---

**2.** Professor Corbin roundly criticizes the decision in *Day v. Lacasse*, 85 Me. 242, 27 A. 124 (1892), saying that "the nature of the statutory requirement and the purpose of 'delivery' seem to be grossly misunderstood." 2 *Corbin on Contracts* § 510, at 737–38 (1950).