## CARR et al. v. MAZON ESTATE, Inc.

(No. 2271.    March 11, 1919.)

(Rehearing denied Aug. 11, 1920.)

### SYLLABUS BY THE COURT.

1.    The appointment of a real estate broker or agent "to sell for it all of its property" does not, in the absence of special circumstances, authorize the agent to make a binding contract of sale for the owner.                                    P. 310

2.    In the absence of a valid contract of sale of real estate, an undelivered deed, or one delivered in escrow where the grantor retains control over the same, is not a sufficient memorandum to satisfy the statute of frauds.          P. 311

Appeal from District Court, Bernalillo County, Raynolds, Judge.

Suit by Clark M. Carr and T. F. Godding, doing business under the firm name of the Carr Godding Sheep Company, against the Mazon Estate, Incorporated. Motion to strike parts of complaint sustained in part and overruled in part, and a demurrer sustained in part and overruled in part, and plaintiffs appeal. Affirmed.

H. B. JAMISON, of Albuquerque, for appellants.

NEILL B. FIELD, of Albuquerque, for appellee.

### OPINION OF THE COURT.

PARKER, C. J.    The appellants alleged in their complaint, inter alia, as follows, in substance:   On or about December 26, 1916, the appellee employed one J. R. Moore as a real estate broker and agent to sell for it all of its property, consisting of real estate and personal property, located in ' Valencia county, upon certain terms and conditions; that thereafter the appellee agreed with said Moore upon and designated one William Wilcox, with his consent, as trustee and depository of the legal title for the benefit of the prospective vendee or vendees of said property, and that said Wilcox agreed to act in such capacity, and that a memorandum of such facts was to be found in a certain finding of fact requested and signed by the appellee by its

agent in a certain cause in which the said Moore was
the plaintiff and the said appellee was the defendant in
the district court of Bernalillo county; that thereafter,
on January 2, 1917, the appellee executed and deposited
with the First Savings Bank & Trust Company, in favor
of said William Wilcox, or his assigns, divers deeds,
bills of sale, and agreements, copies of which are at-
tached to the complaint and which convey the property
concerned in the transaction; that appellee deposited
said deeds, bills of sale, and agreements, under certain
written instructions, with the said Bank & Trust Com-
pany, a copy of which instructions is attached to the
complaint and which directs the said Bank & Trust
Company to deliver all of the foregoing documents to
the said Wilcox or his assigns on or before January 31,
1917, upon the payment in cash of $84,575; that there-
after, on January 15, 1917, appellee, by its agent Moore,
offered to sell the entire property described in said
deeds, bills of sale, and agreements for the prices and
under the conditions mentioned in said instruments to
the appellants; that thereafter appellee, in Albuquer-
que, N. M., delivered to appellants an order in writing,
signed by it, addressed to one of its agents in Valencia
county, instructing its agent to permit appellants or
their authorized agent to examine the property de-
scribed in said instruments so that said appellants
might decide whether they desired to purchase the
property; that on January 26, 1917, appellants accepted
said offer of January 15, 1917, and thereupon agreed to
buy all of said property and to pay appellee the price
specified in said deeds, bills of sale, etc.; that upon
January 27, 1917, the appellee stated to appellants that
it would refuse to deliver to the appellants, under any
conditions, any of the property mentioned in said in-
struments, and did wrongfully and unlawfully refuse
to deliver any of said property; that on January 31,
1917, the said Wilcox assigned to the said Moore all of
his right, title, and interest under said deeds, bills of
sale, and contracts, and convenanted to convey to the
said Moore upon demand all of the real estate and per-

sonal property described in the said instruments; that
thereafter, on January 31, 1917, the said Moore as-
signed to appellants, in the same manner as Wilcox had
assigned to him, his rights under the said documents;
that on January 31, 1917, after the assignment from
Wilcox to Moore and the assignment from Moore to the
appellants, appellants tendered to said First Savings
Bank & Trust Company the sum of $84,575 for the bene-
fit of the said appellee, and demanded of the appellee that
it deliver to them all the property so agreed to be de-
livered, and that it otherwise perform its said contract;
that they had performed all of their obligations under
said contract, but that the appellee had refused, failed,
and neglected to perform, and the appellants claimed
damages in the sum of $20,000.

A motion to strike portions of the complaint was sus-
tained in part and overruled in part, and thereupon a
demurrer was filed which was likewise in part sustained
and in part overruled.

The appellee by its demurrer raises two points, viz.:
That no privity of contract is shown between the
parties, and that the contract sought to be set up is, if
any existed, within the statute of frauds, and not en-
forceable.   These propositions are presented in para-
graphs A, B, C, and D of the demurrer.

[1]   The facts set up in the complaint clearly show
that the agent, Moore, had no power when first em-
ployed to make a contract of sale with any one.   He
was a real estate broker and agent appointed by the
appellee "to sell for it all of its property."   There is
no allegation of the granting of any authority to make
a binding contract of sale for the appellee.   That such
authority as was given to this agent does not give
authority to make a binding contract of sale, see
Walker, Real Estate Agency, § 18; 9 C. J. 526; 4 R. C.
L. title "Brokers," § 14; 1 Mechem on Agency (2d Ed.)
§§797, 798; Craig v. Parsons, 22 N. M. 293, 161 Pac.
1117; Jaspar v. Wilson, 14 N. M. 482, 94 Pac. 951 23 L.

R. A. (N. S.) 982. In the latter case cited the territorial court held that the circumstances in that case were such that the agent did have authority to make a binding contract of sale. The facts in that case were materially different from those set up by the complaint in the case at bar.

The allegations in the complaint, therefore, that the agent Moore offered to the appellants all of the property, and that the appellants accepted the offer and agreed to purchase the property, is of no avail to the appellants, whether the offer and acceptance were in writing or by parol.

[2] Counsel for appellants seek to draw from the various writings between the parties authority for the agent to make the contract for sale. There is no allegation in the complaint that the appellee ever made the direct offer to sell the property to the appellants either in writing or by parol. At the time of the placing of the deeds and bills of sale in the bank, the appellants were unknown so far as it appears from the complaint. These papers were put in the bank on January 2, 1917, and it was not until January 15, 1917, that the agent, Moore, offered to sell the property to appellants. The writing signed by the appellee and addressed to its agent in Valencia county, which instructed said agent to permit appellants to examine the property, so that they might decide whether they desired to purchase the same, was not a promise or offer to sell to the appellants.

The deeds, bills of sale, etc., which were placed in the bank conveyed the property to one Wilcox, and the writing accompanying the same, signed by the appellee, authorized and directed the delivery of these papers to Wilcox, or his assigns, upon the payment of a specified sum of money within a specified time. Evidence in writing of the character of Wilcox as grantee under said papers is furnished by a finding requested by appellee in a certain other cause in the district court of

Bernalillo county between the agent, Moore, and the appellee, in an action by Moore to recover a commission for his services, which was to the effect that said Wilcox never had any intention of becoming the purchaser of the property, but that the agent, Moore had procured the consent of Wilcox to permit his name to be inserted in the instruments for a consideration and upon the promise of Wilcox to make a conveyance to such person as might be designated by the said Moore.

These are all the writings which the appellants have pleaded and rely upon, and the question is: Do they, taken separately or together, authorize the agent, Moore, to make a binding contract with the appellants for the sale of this property? That the appellee at one time contemplated selling the property to appellants is evidenced by the written order to its agent to allow inspection and examination so that appellants might determine whether they would purchase, but appellee never granted to the agent, Moore, any authority to deal with the appellants in such a way as to bind it to convey. It did convey to Wilcox, or assigns, and placed the deeds in escrow, but they were executed and deposited so that Wilcox might transfer to the purchaser when found. It was merely to facilitate a sale when consummated that these papers were executed, and they were wholly without consideration as between the parties thereto. The papers might at any time have been withdrawn by the appellee; there being no contract between it and its agent, Moore, that they were to remain in escrow and be delivered upon the performance of conditions. Moore could not under the circumstances assume any adverse position to the appellee, as he was its agent and was acting for, and in concert with, it to effect the sale of the property. It did not under the circumstances surrender its dominion over its property, and there is no pretense that it ever either orally or in writing empowered the agent, Moore, to do more than find a purchaser.

This being our interpretation of the circumstances

and the papers, the simple question recurs whether the oral offer of the agent and the oral acceptance by appellants effected an enforceable contract, and the evident answer is, of course, that it did not, because of the provisions of the statute of frauds. It may be that appellants by performance of the conditions imposed in the escrow before revocation by appellee might have secured the papers from the depository, but it failed to do so. Had it done so, the case would resemble somewhat the case of Blacknall v. Parish, 59 N. C. 70, 78 Am. Dec. 239, cited by counsel for appellants. In that case the owner, being about to remove from the county where he lived to another part of the state, authorized the agent to sell for him the land in question, and to enable him to do so prepared a deed describing the land purporting to convey the same in fee, but leaving blanks as to the name of the vendee and the price, and gave oral instructions to the agent to fill up the blanks in the deed in case he made a sale and to deliver to the purchaser. The agent made a sale at a reasonable price and filled up the deed in the proper places with the names of the vendee and the price, and the price was paid. It was held under the circumstances that the deed, while not operative as such, was a memorandum sufficient to take the case out of the statute of frauds. It is to be observed, however, that in that case the agent was authorized by the owner to sell and pass title to the purchaser, which he attempted to do by means of a writing in the form of a deed, which was delivered and the purchase price paid. There was evident intent on the part of the owner expressed in writing that the agent might contract and convey the title. Just so in the case at bar, there was an intent on the part of the appellee that the agent, Moore, might find a purchaser for the property and he might deliver the papers placed in escrow to the purchaser upon the performance of the conditions, and had the same been done a good title would have passed to the appellants. But the appellee gave no irrevocable power to the agent, and until payment of the price named the agent had no power to de-

liver the papers or to make a contract for their delivery. The appellee reserved the right under the circumstances to abandon the enterprise at any time before the payment of the money. On the other hand, in the North Carolina case the transaction was consummated, and it became an enforceable contract between the parties. In such a case, of course, the deed, though defective, was a sufficient memorandum of a contract actually made to satisfy the statute. This distinction is pointed out in 2 Page on Contracts, § 686. The author states that the weight of authority is that an undelivered deed, or a deed in escrow, is not a sufficient memorandum to take the contract out of the statute of frauds. Upon principle this must be correct, although there is great conflict in the cases. Of course, if there is a contract in fact made with authority by an agent, a deed executed in pursuance of the contract and referring to it would be a memorandum sufficient to satisfy the statute. But where no contract exists independent of the deed, an undelivered deed can create no contract and is not evidence of a contract; there being none. When the deed is delivered, it becomes the contract, and of course evidences the same. See in this connection 29 A. & E. Ency. Law (2d Ed.) 855.; 20 Cyc. 257; Charlton v. Columbia Real Estate Co., 67 N. J. Eq. 629, 60 Atl. 192, 69 L. R. A. 394, and note, 110 Am. St. Rep. 495, 3 Ann. Cas. 402. See, also, Moore v. Ward, 71 W. Va. 393, 76 S. E. 807, 43 L. R. A. (N. S.) 390, Ann. Cas. 1914C, 263, and note, where recent cases are collected. In some of the cases the distinction is made that an undelivered deed may be sufficient memorandum where it contains a recital that it is made in pursuance of a previous contract, and not otherwise. An example of this holding is Lowther v. Potter (D. C.) 197 Fed. 196.

Kopp v. Reiter, 146 Ill. 437, 34 N. E. 942, 22 L. R. A. 273, 37 Am. St. Rep. 156, is an instructive case on the general subject under discussion. In that case Reiter, the husband of the owner, contracted in writing for a sale of the property to Kopp, who paid $250 as earnest

money, and agreed to pay $2,750 after title was ex-
amined and found to be good.  For the balance Kopp
was to give his notes secured by a trust deed on the
property.  Reiter had been brought into communica-
tion with Kopp by a real estate firm, and the earnest
money and contract were deposited at their office.  Ab-
stract was delivered to Kopp, who after examining it,
demanded an affidavit establishing the death of a party
whose death was recited in one of the deeds.  Mean-
while a warranty deed had been executed by Mrs.
Reiter and her husband, but was retained by the latter.
Kopp also executed the note and trust deed, but they
were never delivered to Reiter.  The affidavit demanded
was never obtained.  On a certain date Mrs. Reiter told
her husband that, unless Kopp closed the transaction
on that day, she would not permit the deed to be de-
livered.  Kopp was communicated with, and said that
he could not pay the money until the following Mon-
day.  Reiter upon receiving this answer said that the
business must be completed on that Saturday, or not at
all.  When Kopp came on Monday to pay the money,
he was told that it was too late.  On Wednesday Kopp
tendered the amount he was to pay down and the note
and trust deed, which were refused, and a few days
after the warranty deed was destroyed.  In Illinois
their statute requires authority of an agent to make a
contract for the sale of real estate to be in writing,
which was not had in this case by the husband.  The
contract therefore was a parol contract.  The deed ex-
ecuted by the wife was not executed with reference to
the previous written contract, but with the understand-
ing that the husband was to deliver it upon receiving
$3,000 in money and a note and trust deed for $2,000.
The court said:

"Where, as is the case here, the owner of the land, without
making a valid executory contract to convey it, deposits a deed
of it with a third person to be delivered to the grantee upon
certain terms, he may cancel the instructions given to such
third person and recall the deed at any time before the
specified terms have been complied with; nor can such deed,
invalid as a conveyance for want of delivery, be considered as

a memorandum in writing, signed by the owner agreeing to convey the land therein described so as to authorize a decree of specific performance. A deed which has not been delivered is not, by its own force and aside from any contract to which it may be related, a sufficient writing to meet the requirements of the statute of frauds."

In Morrow v. Moore, 98 Me. 373, 57 Atl. 81, 99 Am. St. Rep. 410, a deed was executed by the owner and sent to his attorney for delivery upon the payment of the purchase price, and the court said:

"Nor do these facts, the signing of the deed by the plaintiff and its being sent by him to his attorney, constitute a sufficient memorandum in writing to take the contract out of the statute of frauds. It was still an unexecuted deed because undelivered and still in the possession and under the control of the grantor. Day v. Lacasse, 85 Me. 242, 27 Atl. 124."

In Campbell v. Thomas, 42 Wis. 437, 24 Am. Rep. 427, the parties entered into a parol agreement for the sale of certain land at a stipulated price. The purchaser paid the owner a small sum on account of the purchase money, and the latter executed a deed of the premises to the purchaser and delivered the same to his attorney, with directions to deliver it if the purchaser should two days later deposit with the attorney his notes and mortgages on the property to a certain sum and at the same time pay the balance of the agreed price. At the appointed time the purchaser deposited with the attorney the notes, mortgages, and money as agreed, and demanded the deed; but the attorney, acting in obedience to directions from the owner, refused to deliver the deed. At the same time the owner tendered back to purchaser the money which the latter had paid when the verbal agreement was made. The action was brought to compel the attorney to deliver the deed. The court, after an examination of many of the cases discussing the question of the delivery of a deed being necessary, says:

"But we have not discovered a single case in which it has been held that one who has deposited a deed of land with a third person with directions to deliver it to the grantee on the happening of a given event, but who has made no valid executory contract to convey the land, may not revoke the

directions to the depository and recall the deed at any time before the conditions of the deposit have been complied with, provided those conditions are such that the title does not pass at once to the grantee upon delivery of the deed to the depository."

In Mertz v. Hubbard, 75 Kan. 1, 88 Pac. 529, 8 L. R. A. (N. S.) 733, 121 Am. St. Rep. 352, 12 Ann. Cas. 485, a real estate broker wrote to the owner of a tract of land saying that he had a customer for it and asking its price. Correspondence followed, which resulted in a contract in writing for the sale of the land, except that, while it showed that the agent was acting for another, and was not himself bound, it nowhere disclosed the identity of his principal. The owner refused to convey, and the would-be purchaser brought an action for specific performance. The court, after an exhaustive review of the authorities, said:

"Where a written agreement for the sale of lands is entered into by two competent persons, each apparently acting for himself, the requirements of the statute of frauds are fully met and the result is a valid and enforceable contract. Being then complete, it has no further concern with the statute. It is like any ordinary written contract. Parol evidence cannot vary its terms, but may add a new obligor or obligee by showing that one or the other of the parties was in fact acting as the authorized agent of a third person. The authorities are practically unanimous on this proposition. (Citing cases.) But when the writing discloses that one of the persons is avowedly acting as an agent for some one else, who is not named or described, an entirely different situation is presented. An imperative requirement of the statute is that the memorandum must indicate the parties. 29 A. & E. Ency. of L. 864. This requirement is not met by the naming of an agent who confessedly acts only as such. Not being personally concerned in the matter, assuming no individual liability, he is not a party to the agreement. The mention of his name is therefore immaterial, and fails to satisfy the statute. The memorandum being for this reason futile, no enforceable contract results."

So in the case at bar neither Moore, the agent, nor Wilcox, the trustee, assumed any individual liability or made any contract with the appellee by reason of the papers heretofore mentioned. These papers, as heretofore pointed out, were prepared merely for the purpose of facilitating the transaction in case a purchaser

should be found, and were not intended by the parties as any contract between them. The appellee therefore necessarily retained full control and dominion over them.

Many other cases might be cited, but they are all referred to in the citations heretofore made and will require no further discussion.

It seems clear from the cases, as we understand them, that the facts presented in this case fail absolutely to make out any contract between the appellants and the appellee which is enforceable under the statute of frauds. It is true that appellants allege that they tendered to the bank the purchase price of the property for the benefit of the appellee within the time limited by the terms of the escrow, if such it may be called, but we do not understand from the brief of counsel that any reliance is placed upon this allegation as showing performance by appellants. What appellants rely upon is the proposition that the papers pleaded and set out constitute a sufficient memorandum of a contract between the parties to satisfy the statute of frauds. In this, as we have seen, they are in error.

It follows that the judgment of the district court was correct and should be affirmed; and it is so ordered.

ROBERTS, J., concurs.

RAYNOLDS, J., having tried the case below, did not participate.