184 P.2d 647

**PITEK v. McGUIRE et al.**

No. 4991.

Supreme Court of New Mexico.

Sept. 9, 1947.

Don G. McCormick, of Carlsbad, and Allen M. Tonkin, of Albuquerque, for appellant.

Iden & Johnson, of Albuquerque, for appellee Katherine McGuire.

On Rehearing.

PER CURIAM.

Upon rehearing the original opinion has been withdrawn and the following substituted:

BRICE, Chief Justice.

The appellant is of the opinion that the order herein granting a rehearing being general that all points and questions which were, or *might have been,* presented in the original hearing may be presented and considered on this rehearing. Whether this is correct in the absence of a contrary rule, we need not decide; but it cannot apply in this jurisdiction because of the following rule: "The motion for rehearing shall be directed to the opinion of the court, and shall distinctly specify wherein the same is erroneous; but shall not renew contentions previously argued and submitted and expressly disposed of except to invoke an earlier decision, a statute or a rule of court deemed controlling and previously overlooked. The motion may also direct the court's attention to fundamental or jurisdictional error not previously presented, and may renew any contention deemed controlling and not expressly passed upon." Sec. 1, Supreme Court Rule 18.

Necessarily the review on rehearing is limited to questions authorized by the rule, otherwise the rule would be without effect.

But the appellant has limited his attack on the opinion of the Court by his motion to two propositions, to wit:

"The Court has failed in its opinion to consider the effect of two letters written by defendant's attorney to plaintiff after the oral contract was made, which letters, together with other writings signed by defendant, constitute a complete memorandum.

"The Court, in its opinion, has overlooked a controlling rule of law in holding that the memorandum must be wholly executed subsequent to the oral agreement."

The scope of a rehearing ordinarily is limited by (1) the assignments of error, (2) the points made in the original hearing, (3) Sec. 1 of Supreme Court Rule 18, supra, (4) and the asserted errors contained in the motion. Arizona Prince Copper Co. v. Copper Queen Copper Co., 2 Ariz. 169, 11 P. 396; State v. McKnight, 21 N.M. 14, 153 P. 76; Goodeve v. Thompson, 68 Or. 411, 136 P. 670, 137 P. 744; Honea v. St. Louis, etc., R. Co., 245 Mo. 621, 151 S.W. 119; 4 C.J.S., Appeal and Error, § 1448; 3 A.J., Appeal and Error, Sec. 806.

Because of the withdrawal of the original opinion all questions presented at the original hearing will be reconsidered.

This action was brought to enforce the specific performance of a contract for the sale and purchase of real estate; and the questions are, (1) was the contract within the statute of frauds? and (2), if not, was there such inadequacy of consideration as that a court of equity should not enforce specific performance?

The facts are substantially as follows:

The appellee Katherine McGuire (hereafter called defendant) is the owner of Lots 3 to 8 inclusive, of Block 4, Mankato Place Addition to the city of Albuquerque, New Mexico, having purchased them for $1,100 in 1926. These lots front 150 feet on East Central Avenue. The record title to this property was held in the name of the defendant Kahler, an ex-service man, in order to receive the benefit of the soldier's exemption from taxation and thus defraud the state of its taxes. Defendant held an unrecorded warranty deed from Kahler. On the 14th day of August, 1945, the plaintiff wrote defendant as follows:

"Friends of ours, Mr. and Mrs. James Cusack, said you are the owner of a lot on East Central Ave., but do not know the exact location.

"Is the lot for sale? and if so, would you give us the exact location and the description?"

To this letter the defendant answered as follows: "In response to your letter, I do own two parcels of property on Central Ave., one on Mankato Place 3 x 8, or 150 ft., and the second one on Unity St., 42. I wish you would put a price on both of those. Also block on Mesa Park 9."

Answering, plaintiff wrote defendant McGuire, offering her $3,500 "for her property fronting 150' on East Central Avenue, Albuquerque, N. M." Defendant replied to this letter, stating she had more than $3,500 in these lots. Shortly thereafter plaintiff again wrote, asking defendant to put a price on the lots but defendant did not reply to this letter. Under date of October 18, 1945, plaintiff wrote to defendant as follows: "Have been waiting for a reply to my last letter in regards to the lots in Chicago regarding the purchase of this property. During the conversation the defendant's son Maurice McGuire, an attorney aged 42, was present. In this conversation the plaintiff offered defendant $10,000 for the property and she countered with an offer to accept $12,000. At the suggestion of defendant's son, the conferees "split the difference" and agreed upon a price of $11,000. Plaintiff then wrote out and handed to defendant a check, as follows:

"New Mexico State Bank
Albuquerque, N. M. Nov. 9, 1945    No. ———
Pay to the Order of    Katherine McGuire         $500.00
Five Hundred and no/100         Dollars
To be applied on purchase of
property on E. Central Ave.
Albuquerque, N. M. Bernalillo Co.
Leaving balance of 10,500 dollars            Albert Pitek"

you own on Central Ave. Have you put a price on them? and do you still intend to sell? I would like to know—perhaps we can get together. Won't you let us know one way or another?"

Under date of November 2, 1945, defendant replied as follows: "Their was a block long frontage in the 4400 block of E. Central was purchased by Latif Hyder. The 250 ft. was about $20,000. So my half block near to town ought to be worth $12,000, Twelve Thousand Dollars."

This ended the written negotiations of the parties. On November 9, 1945, the plaintiff conferred with the defendant at her home

The plaintiff asked to see a deed or tax receipt or some other evidence of title. He was informed that no taxes were being paid on the property. He was shown an unrecorded deed from defendant Kahler to defendant McGuire, in which the property was conveyed to the latter, but plaintiff was not permitted to take it away. The following morning defendant McGuire's son gave plaintiff a prior recorded deed in which the property in suit was described; and was also given a note to be delivered to W. A. Keleher, defendant's attorney, the contents of which are not disclosed by the record.

The defendant received the above described check for $500 as part payment on the property she sold to plaintiff, and advised him that her attorney W. A. Keleher of Albuquerque, would prepare all necessary papers to close the deal. The plaintiff requested that the check be held a few days until he verified the location of the lots. The plaintiff verified the location of the lots and thereafter on the 26th of November defendant endorsed the $500 check and deposited it in a Chicago bank. It was duly cleared and charged to plaintiff's account.

Thereafter and prior to December 8, 1945, defendant signed and acknowledged a warranty deed from herself as grantor to plaintiff and his wife as grantees in joint tenancy, correctly describing the property involved herein, which deed she mailed, together with an unrecorded deed from defendant Kahler to herself, to her attorney, W. A. Keleher. On December 8, 1945, W. A. Keleher wrote plaintiff as follows: "Please be advised that I have now received the abstract of title to the McGuire property which you are purchasing. If you will call at the office, I will be glad to hand you same for examination. I am holding for recordation Warranty Deed from Kahler to Katherine McGuire and deed from Katherine McGuire to you and your wife as joint tenants. These will be taken care of at the time of closing the transaction with you."

In response to this letter, plaintiff called at the office of W. A. Keleher and was informed by him that something had happened and that plaintiff would hear from him, Keleher, in a few days. On December 12, 1945, W. A. Keleher wrote plaintiff, as follows:

"Dear Mr. Pitek:
A letter today from Mr. Maurice McGuire of Chicago advises that Otto Kahler refuses to permit the sale to you to go through. He has asked that I return to you the enclosed check for $500 drawn on the Merchants National Bank in Chicago, signed by Katherine McGuire."

No direct representations as to the value of the property involved were made by plaintiff to defendant. Defendant was pleased and satisfied with the transaction until she learned about December 11, 1945, that the property was worth a great deal more than $11,000.

Plaintiff is 45 years of age, with a sixth grade education. Defendant is the owner of five improved parcels of real estate in Chicago, rented to business concerns, the dwelling where she resides, in addition to the property owned by her in and near Albuquerque, New Mexico.

She is 76 years of age and is possessed of all her mental faculties. She had not been in Albuquerque for four years preceding this transaction. One sister and her son-in-law, defendant Kahler, resided in Albu-

querque, with both of whom she corresponded.

In Albuquerque, New Mexico, real estate values generally have advanced greatly during this period. On East Central Avenue, in the area of the property involved, there had been great activity and building, the most spectacular advances in the price of real estate occurring during the summer and fall of 1945. The actual market value of the McGuire property on November 9, 1945, was $25,000, and plaintiff, on the said date, well knew that the McGuire property was worth a great deal more than $11,000.

Plaintiff is able, ready, and willing to pay the balance of $10,500 on the contract and to close the transaction.

Defendant owned no property in Mankato Place Addition to the city of Albuquerque, except that in suit. It is within the city limits of Albuquerque, and lies in the 3900 block on East Central Ave. It is nearer to the business district of Albuquerque than the 4400 block referred to by defendant in one of her letters as having been purchased by one Latif Hyder. The only other property owned by defendant on East Central Avenue is one full block in Unity Addition, which lies about three miles east of the Mankato Place Addition and outside the city limits of Albuquerque, although within the Albuquerque post office zone.

The trial court concluded that the defendant was the owner of the property in question; that the contract was void and unenforcible because within the statute of frauds of the states of New Mexico and Illinois. That by reason of the unconscionable conduct of the plaintiff and the gross inadequacy of the consideration, the plaintiff is not entitled to specific performance of the contract alleged in the complaint, or to damages; and that the contract sued on should be cancelled. A decree was thereupon entered for defendant.

The foregoing findings of the trial court are stated in 31 paragraphs, substantially all of which are statements of evidence or evidentiary facts. A half dozen or so findings of ultimate facts would have stated the essentials for a decision. The testimony is not in the record, but the parties agree that the facts stated are correct, and we have concluded to review the case as thus presented.

The findings of the trial court satisfy us that the plaintiff has established all facts necessary to a recovery, if a memorandum of the contract was signed by the defendant that satisfies the requirements of the statute of frauds.

The trial court concluded that the agreement in suit is within the fourth section of the English Statute of Frauds and Perjuries (29 Charles II, C. 3) which has been adopted in this jurisdiction. Section Four thereof is as follows: "No action shall be brought upon any contract or sale of tene-

ments or hereditaments, or any interest in or concerning them, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or by some person therewith by him lawfully authorized."

This conclusion of the trial court is assigned as error, as follows:

"A check given by purchaser of land to seller as down payment, and indorsed and cashed by seller, containing a notation as follows:

"To be applied on purchase of property on E. Central Ave. Albuquerque, N. M. Bernalillo Co. leaving balance of $10,500." is a sufficient memorandum to satisfy the statute of frauds, where: a. Previous letters signed by seller had substantially described and identified property. b. Seller owned no other real estate which could fit the description on the check and in the signed letters. c. Seller executed and acknowledged a deed to purchaser, containing correct legal description, which deed was sent by seller to her attorney with instructions to deliver to purchaser, but which instructions were later countermanded."

■ To satisfy the statute of frauds the contract itself must be in writing; or if verbal, then there must have been some writing subsequently made however informal, stating each of its essential elements, signed by the person to be charged, or by his authorized agent acting for him.

■ The essentials of such contracts have been stated as follows:

"A memorandum, in order to make enforceable a contract within the statute, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty, (a) Each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and (b) the land, goods, or other subject-matter to which the contract relates, and (c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made." Restatement of Law of Contracts, Sec. 207.

"Generally speaking, a memorandum in writing meets the requirements of the statute of frauds that certain contracts shall be evidenced by writing if it contains the names of the parties, the terms and conditions of the contract, and a description of the property sufficient to render it capable of identification." 49 A. J. "Statute of Frauds" Sec. 321.

The only writings signed by defendant having reference to the oral contract were the deed sent to her attorney, and that on the check which was endorsed by her.

That the description of the land written on the check is inadequate to satisfy the statute of frauds is conceded by plaintiff. He states his contention as follows: "Plaintiff contends that the check given by him to defendant McGuire as a down payment on the property, aided by the previous correspondence and aided by the fact that defendant McGuire executed a deed containing the exact legal description, constitutes a sufficient memorandum to satisfy the Statute of Frauds."

■ The only land defendant owned in the City of Albuquerque situated on East Central Avenue at the time the check was endorsed by defendant, was lots 3 to 8 inclusive, of Block 4, Mankato Place Addition to the city of Albuquerque, which consisted of six contiguous lots fronting 150 feet on that avenue. She did own property beyond the city limits of Albuquerque, fronting on an extension of East Central Avenue, but the description excludes that property. It is evident that the memorandum had reference to the Mankato Place property, or some part of it. One or more of the lots would come within the description. If the description had been "all of payee's property fronting on East Central, etc.;" or "property fronting 150 feet on East Central, etc.," the description would have been sufficient. But, while the property is in one tract, it is divided into lots, any one or more of which is "property on East Central Avenue, etc."

A very similar case is Durkin v. Machesky, 177 Wis. 595, 188 N.W. 97, 98. The memorandum was an endorsed check. The Wisconsin court said:

"On October 10, 1918, plaintiff gave defendant a check for $100, on which was the following indorsement: 'Southwest corner 28th and Meinecke, purchase price, $1,800, deposit $100, balance $1,700 to be closed in October 17, 1918.'

"The check was indorsed and cashed by Machesky.

\*       \*       \*       \*       \*       \*

"But we are satisfied that the description was too vague and uncertain to constitute a binding contract. It does not appear whether one lot or more was intended. Counsel for defendant cite cases where parol evidence has been received to identify the land, but they are cases where some language was expressed in the writing to which parol evidence could be linked and the property identified with reasonable certainty.

"If the writing had contained in addition to that used such words as 'my property,' or 'the property in my possession,' and if defendant had owned no other property, or had possession of none other at the place in question, or if some similar language had been used as a foundation for the parol evidence, a different situation would be present, and the rule, 'That is certain which can be made certain,' might be invoked. Both the civil and the circuit judge found

the description insufficient, and we are of the same opinion."

See Corrado v. Montuori, 49 R.I. 78, 139 A. 791; Pope v. Myers, 218 Ky. 731, 292 S.W. 318; Shy v. Lewis, 321 Mo. 688, 12 S.W.2d 719; Lente v. Clarke, 22 Fla. 515, 1 So. 149; Lehman v. Pierce, 109 Ind.App. 497, 36 N.E.2d 952 and Annotations 20 A. L.R. 363 and 153 A.L.R. 1112. This memorandum standing alone is not sufficient.

The plaintiff asserts that the memorandum written on the check, supplemented by previous correspondence and a description of the property contained in an undelivered deed executed by the defendant after she received the check, satisfied the statute of frauds.

A question is whether the correspondence between the parties antedating the making of the oral agreement may be used as evidence to supplement the description of the property written on the check.

The fourth section of the statute of frauds does not prohibit the making of an oral contract for the sale of tenements, etc. Such a contract may be in writing or oral, but unless it is in writing (that is, if oral) then "some memorandum or note thereof shall be in writing," etc., to legally prove it.

There is a difference between a contract in writing and a memorandum of a parol contract as contemplated by the statute of frauds. The former may be made up of letters and telegrams or any other character of writing or writings, which together will constitute a contract, or it may be a formal contract. But if the contract made is oral, it is written evidence to prove that the particular contract was made that must be produced. The writings need not in themselves amount to a contract or be addressed to the other party. It is sufficient as evidence if the person to be bound signs any statement or document in which he admits that the parties made the oral contract, sufficiently stating therein its essential terms (2 Williston on Contracts (Rev.Ed.) Secs. 567, 579(a); no matter what may be his purpose in making the writing, or to whom it is addressed. 2 Williston on Contracts (Rev.Ed.) Sec. 579, 568; 1 Restatement of Law of Contracts, Sec. 209.

If the description on the check can be supplemented by the letters written prior to the time the parties entered into the oral contract of sale and purchase, then the description of the property is adequate. The contents of these letters consist of negotiations for the sale and purchase of the property in suit. The plaintiff offered the defendant $3,500 for the six lots, which offer she rejected, and that is the substance of these negotiations. Thereafter all negotiations and the agreement itself were oral.

It is commonly said that a memorandum may be made at any time *subsequent* to the making of the oral contract and prior to suit. Williston on Contracts (Rev.Ed.) Sec. 590. But appellant insists that the memorandum required by the statute of frauds may be made prior to the making of a contract. There are statements in text books to that effect. 49 A.J. "Statute of Frauds" Secs. 317 and 335; 2 Williston on Contracts, Sec. 590. But each of these texts has reference to contracts resulting from a written offer orally accepted. The offer bound the offerer when so accepted by the offeree, but the contract thus made was not oral. We have reference to contracts in which the offer and acceptance are oral.

Appellant cites Restatement of Law of Contracts, Sec. 214, as follows: "A signed memorandum that correctly states the terms of a contract satisfies the statute, whether the memorandum is made before or at the time of the formation of the contract, or at any subsequent time during its existence."

This text is supported by the following illustration: "A and B, in January, 1925, enter into an enforceable written contract within the statute, for one year's employment. In January, 1926, they agree orally to enter into another contract 'on the terms expressed in our contract of last year.' There is a sufficient memorandum of the new contract." Illus. 1, Sec. 214.

■ We do not agree that this illustration correctly states the law and we have found no supporting cases. The assumed agreement stated as an illustration, had expired by its terms; and being within the statute of frauds, it could not be revived and extended by parol. No contract within the statute of frauds that has expired by its terms can be revived and extended by parol. Reason and authority are against it. Thompson v. Robinson, 65 W.Va. 506, 64 S.E. 718, 17 Ann.Cas. 1109; Smith v. Taylor, 82 Cal. 533, 23 P. 217, 220; 49 A.J. "Statute of Frauds" Sec. 7; 37 C.J.S., Frauds, Statute of, § 113. See Annotation 17 A. & E. Ann.Cas. 1111.

■ We are of the opinion that a contract wholly oral, and within the statute of frauds, may not be proved by a writing made prior to the meeting of the minds of the parties. Handy v. Barclay, 98 Conn. 290, 119 A. 227; Massie-Wilson Grocery Co. v. Carroll, Brough, Robinson & Humphrey, 105 Okl. 56, 231 P. 1084; Jacobson v. Perman, 238 Mass. 445, 131 N.E. 174; Mead v. Leo Sheep Co., 32 Wyo. 313, 232 P. 511; Rabe v. Danaher, 2 Cir., 56 P.2d 758; 37 C.J.S., Frauds, Statute of, § 171.

■ But this does not necessarily mean that a sufficient memorandum may not

consist partially of writings made prior to the making of the oral agreement. If such prior writings are referred to in, and thereby made a part of, a memorandum or writing subsequently made so it can be said that the prior writings are incorporated therein, it is not objectionable on that account.

■ A memorandum may consist of several writings, such as letters, telegrams, etc. (Restatement of Law of Contracts, Sec. 208), but it is a general rule that collateral papers must be referred to in the faulty memorandum itself before they can become a part of it. It is stated by high authority: "Unless the essential terms of the sale can be ascertained from the writing itself, or by reference in it to something else, the writing is not a compliance with the statute; and if the agreement be thus defective it cannot be supplied by parol proof, for that would at once introduce all the mischief which the statute was intended to prevent." Williams v. Morris, Ex'r, 95 U.S. 444, 24 L. Ed. 360.

There is authority to the effect that where documents show that they each relate to the transaction to be proved, though they contain no express reference to each other, may be taken together to constitute a memorandum of a sale. 2 Williston on Contracts, Sec. 582; Annotation 85 A.L.R. page 1195. But the correspondence in evidence does not and could not contain any reference to a transaction that was yet to transpire.

■ We are of the opinion that the letters in evidence cannot be resorted to to aid the faulty description of the property in the memorandum written on the check.

The finding of the trial court regarding the execution of the undelivered deed is as follows: "Thereafter and prior to 8 December 1945, defendant McGuire signed and acknowledged a warranty deed from herself as grantor to plaintiff and his wife as grantees in joint tenancy, correctly describing the property involved herein, which deed she mailed, together with an unrecorded deed from defendant Kahler to herself, to her attorney, W. A. Keleher."

Presumably this deed is in the usual form of a warranty deed commonly used in this state. Whether it was introduced in evidence we are not advised. Its terms are not mentioned. If it contains the substance of the oral contract, any reference to it, or to the memorandum on the check it does not appear in the findings. We know only that the defendant is grantor therein, that the plaintiff and his wife are grantees therein, and that the land purported to be conveyed by it is that in suit.

■ Ordinarily an undelivered deed in the possession of the grantor or his attorney, that does not contain, or refer to, the terms of an oral agreement to sell and purchase real estate; *or which does*

*not refer to a writing made in pursuance thereof, or in which writing it is not referred to,* cannot be used as evidence to prove the identity of the particular property that was the subject of an oral contract or complete an insufficient description thereof contained in the memorandum. Carr v. Mazon Estate Inc., 26 N. M. 308, 191 P. 137; Swain v. Burnette, 89 Cal. 564, 26 P. 1093; Day v. Lacasse, 85 Me. 242, 27 A. 124; Hartenbower v. Uden, 242 Ill. 434, 90 N.E. 298, 28 L.R.A.,N.S., 738; Bruns v. Huseman, 266 Ill. 212, 107 N.E. 462. See authorities pro and con in Annotations 100 A.L.R. page 196 et seq.

We did not hold in Carr v. Mazon Estate, Inc., 26 N.M. 308, 191 P. 137, 139, as interpreted by defendant, that an undelivered deed could never, under any circumstances, be treated as a memorandum that would satisfy the statute of frauds. To the contrary, we held that if a deed is made in pursuance of the contract and *referring to it,* that it would be sufficient for such purpose. The facts in that case are too complicated to review, but we held therein that there was no contract, oral or otherwise, between the parties. We stated: "The author (Page in his work on Contracts) states that the weight of authority is that an undelivered deed, or a deed in escrow, is not a sufficient memorandum to take the contract out of the statute of frauds. Upon principle this must be correct, although there is great conflict in the cases. Of course, *if there is a contract in fact made* with authority by an agent, a deed executed in pursuance of the contract *and referring to it* would be a memorandum sufficient to satisfy the statute. But where no contract exists independent of the deed, an undelivered deed can create no contract and is not evidence of a contract; there being none. When the deed is delivered, it becomes the contract, and of course evidences the same." (Our emphasis).

This deed was sent by defendant from Chicago to her attorney in Albuquerque who wrote plaintiff regarding it: "I am holding * * * a deed from Katherine McGuire to you and your wife as joint tenants," and this is all that is stated regarding it. If defendant or her attorney had sent plaintiff the deed for examination, or to close the transaction, with a statement that it had been executed for such purpose or purposes, it could have been considered as supplementing the memorandum written on the check. Ryan v. United States, 136 U.S. 68, 10 S.Ct. 913, 34 L.Ed. 447; Bayne v. Wiggins, 139 U.S. 210, 11 S.Ct. 521, 35 L.Ed. 144. But there is nothing in the letter to indicate the contents of the deed, and particularly whether its terms included those of the oral contract made by the parties, or even that it purported to convey the property in suit. It cannot be resorted to as a memorandum for a descrip-

tion of the property involved in the oral agreement.

It is true that a memorandum of an oral sale of real estate need not be made with the formality of a deed; but it must contain a sufficient description of the land, or furnish the means or data within itself which points to evidence that will identify it, and no such memorandum was signed by defendant. Heron v. Ramsey, 45 N.M. 483, 117 P.2d 242; Swiss Oil Corp. v. Eastern Gulf Oil Co., 6 Cir., 297 F. 28; Redemeyer v. Cunningham, 61 Cal.App. 423, 215 P. 83; Gordon v. Perkins, 108 Cal.App. 336, 291 P. 644; Martinson v. Cruikshank, 3 Wash.2d 565, 101 P.2d 604; Gendelman v. Mongillo, 96 Conn. 541, 114 A. 914; Frabiicatore v. Negyesi, 105 Conn. 412, 135 A. 441; Richardson v. Stuberfield, 168 Ark. 713, 271 S.W. 345; Justice v. Justice, 239 Ky. 155, 39 S.W.2d 250; Kentucky Counties Oil Co. v. Cupler, 204 Ky. 799, 265 S.W. 334; Shy v. Lewis, 321 Mo. 688, 12 S.W.2d 719; Smith v. Griffin, 131 Tex. 509, 116 S.W.2d 1064; Taylor v. Sayle, 163 Miss. 822, 142 So. 3.; 37 C.J.S., Frauds, Statute of, § 184; 49 A.J. "Statutes of Frauds" Sec. 394; Annotations in 20 A.L.R. page 363 et seq., and 73 A.L.R. p. 1383 et seq.

The rule in Alabama is not so strict. It was said in Kyle v. Jordan, 196 Ala. 509, 71 So. 417, 418: "While the rule has probably been relaxed, in this state, to the extent that there need not be an express reference in the deed, will, or other writing to the separate extrinsic document, yet we hold that there must be internal evidence of the identity and unity of the two writings as constituting a single transaction."

The decree of the district court should be affirmed, and it is so ordered.

LUJAN and SADLER, JJ., concur.

McGHEE and COMPTON, JJ., did not participate.