260 P.2d 379

**TRAUB v. NASON & CHILDERS et al.**

No. 5656.

Supreme Court of New Mexico.

Aug. 11, 1953.

George T. Harris, Jr., and Paul W. Robinson, Albuquerque, for appellant.

474

Seth & Montgomery and Justin T. Reid, Santa Fe, for appellees.

McGHEE, Justice.

This case was instituted below to recover the reasonable value of the services of plaintiff's testator, Ray O. Burks, who was a real estate agent in Arkansas, in procuring a purchaser of a lease the defendants owned on La Posada hotel and apartments in Santa Fe, New Mexico.

Copies of thirty letters exchanged between Burks and, the defendants are attached to the amended complaint, and it is the contention of the plaintiff they constitute a sufficient agreement or memorandum thereof to avoid the bar of Sec. 75–143, 1941 Compilation, Sec. 1, Ch. 19, Laws 1949, against recovery by a real estate broker on an oral contract of employment, and that the holding of the trial court to the contrary when it sustained a motion to dismiss on the ground they were insufficient in such regard was erroneous.

The statute reads as follows:

"Any agreement entered into subsequent to the first day of July, 1949, authorizing or employing an agent or broker to purchase or sell lands, tenements, or hereditaments or any interest in or concerning them, for a commission or other compensation, shall be void unless the agreement, or some memorandum or note thereof shall be in writing and signed by the person to be charged therewith, or some other person thereunto by him lawfully authorized. No such agreement or employment shall be considered exclusive unless specifically so stated therein."

We had occasion to construe this statute in Harris v. Dunn, 1951, 55 N.M. 434, 234 P.2d 821, 822, 27 A.L.R.2d 1277, where it was sought to charge a real estate agent as trustee of certain real property he had bought at the oral request of the principal, but who took title in his own name and refused to convey to such principal. The real estate agent defended on the ground the contract of employment was not in writing. A majority of the Court rejected the claim and said, in part:

"* * * It seems clear enough that what the legislature intended to nullify was *oral agreements to pay a commission.* * * *

"Statutes such as the one here involved are but extensions and enlargements of the Statute of Frauds. Mason v. Abel, Tex.Civ.App., 215 S.W.2d 377. And the California courts are in agreement with this court in declining to permit the Statute of Frauds to be converted into an instrumentality of fraud. * * * *"

There is a division among the authorities as to whether the employment and rate of compensation must both be in writing, or

only the contract of employment. The California courts hold only the contract of employment is required to be in writing and signed by the party to be charged, and permit oral proof of the amount to be paid. See annotation, 9 A.L.R.2d 757. The cases requiring both the contract of employment and the amount of compensation to be in writing and signed by the party to be charged are annotated in the same volume at page 754 et seq.

But even the liberal rule prevailing in California requires a written contract of employment or authority to the agent to act in behalf of the owner. As is said in Herring v. Fisher, 1952, 110 Cal.App.2d 322, 242 P.2d 963, the mere action of an owner in naming a price in writing to a broker at which he is willing to sell his real property does not constitute an employment of the broker or bind the owner to pay a commission.

In Pitek v. McGuire, 1947, 51 N. M. 364, 373, 184 P.2d 647, 653, 1 A.L.R.2d 830, a case dealing with the sufficiency of a memorandum under the general statute of frauds, we said:

"* * * The writings need not in themselves amount to a contract or be addressed to the other party. It is sufficient as evidence if the person to be bound signs any statement or document in which he admits that the parties

made the oral contract, sufficiently stating therein its essential terms * * *."

This language, we believe, is applicable to the case at bar, as well as the following from the same case, 51 N.M. at page 375, 184 P.2d at page 654, stating the papers or writings which may be considered in such case:

"* * * it is a general rule that collateral papers must be referred to in the faulty memorandum itself before they can become a part of it. It is stated by high authority: 'Unless the essential terms of the sale can be ascertained from the writing itself, or by reference in it to something else, the writing is not a compliance with the statute; and if the agreement be thus defective it cannot be supplied by parol proof, for that would at once introduce all the mischief which the statute was intended to prevent.' * * *"

This allows us to consider only the Childers letters and those of Burks to which the Childers letters expressly refer. We therefore have for consideration exhibits 1, 2, 3, 4, 5, 8, 11, 11B, 13, 19, 22, 23, 26 and 28, in determining whether there was in fact a written employment of the testator. We believe the exhibits in their material parts are fairly summarized or extracted as follows:

Exhibit 1. Burks to Childers, September 19, 1950. Saying he has a party interested

in leasing a hotel, and asking for information about La Posada.

Exhibit 2. Childers to Burks, September 22, 1950. Stating defendants would consider such a proposition from a competent operator, and giving some information. It closes with the following: "If your clients are sincerely interested, I shall be happy to supply detailed information at your request."

Exhibit 3. Burks to Childers, September 25, 1950. "This is to advise that we have a party that really wants to move down to your country and I hope you will write us advising about your hotel, * * *" and asking what would be wanted for it and detailed information about it.

Exhibit 4. Burks to Childers, October 7, 1950. "We would be happy to have our man go down to look your proposition over if we had some idea of the monthly lease rental * * *". Again asked for information about the hotel.

Exhibit 5. Childers to Burks, October 10, 1950. Gave considerable information as to income and stated they would consider a proposition of lease for a percentage of the income; also told Burks they were considering some new construction, and ended with: "If your client is still interested, perhaps you could bring him out for a personal consultation and discussion."

Exhibit 8. Burks to Childers, November 18, 1950. "We have parties that would be very much interested in leasing your hotel, but they are requesting certain information * * * If you care to give it we will be happy to submit your hotel for their consideration." Burks asked for detailed information as to hotel operating costs and income, etc.

Exhibit 11. Childers to Burks, November 27, 1950. Answered letter of November 18, with considerable detailed information, and said he wondered if Burks' client was acquainted with the Santa Fe area. Said it might be well for him (client) to make a trip to Santa Fe and see how he liked it.

Exhibit 11B. Burks to Childers, November 29, 1950. Quotes his telegram saying Englers (prospective purchasers) left Little Rock that day for Santa Fe to visit Childers' hotel, and asked for report on their visit.

Exhibit 13. Childers to Burks, December 13, 1950. Acknowledged letters of November 29th, December 1st and 8th and continued: "Should we receive any inquiries from any of your clients, we will cooperate with them to the best of our ability." Told of the visit of the Englers and said they had gone to Tucson to see Childers' partner; promised to keep Burks advised of developments.

Exhibit 19. Childers to Burks, February 9, 1951. Tells of New Mexico liquor license troubles and the difficulty of getting

a license since the issuance of the big lot by Montoya as he was going out of office, and of a freeze order on new construction, which prevented their proceeding with their building plans. He then states:

"For all of these reasons, I have felt that we should 'clear the air' here somewhat before negotiating for a lease. An operator from Dallas, Texas, came up the other day to negotiate for a lease, and one from Chicago will be here on Tuesday of next week. We are just in a position of having to say to all concerned that we would consider a lease or sale proposition, as we have previously indicated, and are willing to have any interested party examine our facilities and operating statements and submit us a proposition.

"I will try to keep you posted as to our activities in the future, and I sincerely hope that eventually we can make satisfactory arrangements with one of your clients."

Exhibit 22. Burks to Childers, February 26, 1951. "Yesterday I received a copy of Mr. Harold Baker's proposal to lease the La Posada Hotel addressed to Mr. R. H. Nason of Santa Fe * * * ". Calls attention to the offer and asks Childers to get in touch with Nason and write Burks his frank opinion of the proposal, and also Mr. Nason's opinion.

Exhibit 23. Childers (by Mrs. Childers) to Burks, February 28, 1951. Refers to Burks' letter of February 26, and states she has forwarded Mr. Baker's proposal to Nason in Tucson and suggested Nason give the proposal his serious consideration. States she has not heard from him and has no idea whether he will accept.

Exhibit 26. Burks to Childers, May 2, 1951. States a few days ago he wrote Childers about the commission on the sale to Baker but has not had a reply.

Exhibit 28. Childers to Burks, May 9, 1951. States Baker agreed to pay any commission due but now said he would not do so; Childers also declined to pay a commission.

It is well to here state the first written statement by Burks that he would expect a commission to be paid by the defendants in the event of a sale to a purchaser furnished by him is found in Exhibit 21, dated February 24, 1951, where he states:

"Should the La Posada Hotel be sold through our efforts we will expect you to pay us 5% commission when the deal is closed."

Childers did not answer Exhibit 21, but did thereafter sell the lease to Baker.

We are unable to find in the exhibits any contract of employment of Burks by the defendants, or any written admission of an oral contract of employment, so as to avoid the bar of the statute, Sec. 75–143, supra, under the rule of Pitek v. McGuire, supra.

As the plaintiff has not met the requirements of either the California or the majority rule set out in the annotation in 9 A.L.R.2d, supra, and our own decision in Pitek v. McGuire, supra, it is unnecessary to here decide which rule we will follow when a decision on the point is necessary. Because of the statute the plaintiff may not recover under either rule in this case, although from the exhibits it is clear Burks furnished the buyer of the lease from the defendants.

The judgment must be affirmed. It is so ordered.

SADLER, C. J., and COMPTON, LUJAN, and SEYMOUR, JJ., concur.