753 P.2d 894

**BOSQUE FARMS HOME CENTER, INC. d/b/a Nino's Home Center, Plaintiff–Appellee,**

v.

**TABET LUMBER COMPANY, INC., a New Mexico corporation, and Joe Tabet, Defendants–Appellants.**

No. 16896.

Supreme Court of New Mexico.

April 11, 1988.

Rehearing Denied May 10, 1988.

Gene E. Franchini, Michael Allison, Albuquerque, for plaintiff-appellee.

Martha A. Daly, Santa Fe, Thomas J. Rutherford, Thomas A. Tabet, Albuquerque, for defendants-appellants.

## OPINION

STOWERS, Justice.

Defendant-appellant Tabet Lumber Company, Inc. (Tabet) appeals the district court judgment in favor of plaintiff-appellee Bosque Farms Home Center, Inc., doing business as Nino's Home Center (Bosque). We reverse.

In December of 1975, Bosque, through Mr. and Mrs. Nino Trujillo, entered into a lease with Tabet for certain property where Nino's Home Center was located. At that time, Mr. Trujillo was president of Bosque. Mrs. Trujillo, now divorced from Mr. Trujillo, is the daughter of Tabet's president. In October of 1981, Mr. Trujillo, on behalf of Bosque, negotiated the sale of Nino's Home Center to Hacienda Home Center of Bosque Farms, Inc. (Hacienda). Since Hacienda insisted on a new lease with Tabet, the owner of the land, Mr. Trujillo began negotiations with Hacienda as to that lease. At the same time, Mr. Trujillo met with Tabet to discuss the sale of Nino's Home Center and a new lease with Hacienda. Mr. Trujillo testified that he prepared and took written proposals to that meeting.

One of those proposals set out some of the terms of the proposed lease, including the amount of rent to be charged over a twenty-year period and the amount to be paid to Mr. Trujillo as consideration for his negotiating the lease. This latter provision specified that the rent would be equally divided between Bosque and Tabet and that Bosque would pay one-half the taxes and insurance on the property. Subsequently, Tabet established an escrow account, directing that one-half the rentals be paid to an account for Bosque and the other half to Tabet. The escrow account for Bosque was to assure mortgage payments on Mr. and Mrs. Trujillo's residence. Bosque received half of the rental payments from January 1982 through June 1984. Although Mr. and Mrs. Trujillo were divorced in October of 1982, Mrs. Trujillo remained in the residence until May 1984.

The district court found that Tabet and Bosque had entered into a valid oral contract which Mr. Trujillo memorialized in notes made *during* the meeting between them, whereby Mr. Trujillo would negotiate the new lease with Hacienda for one-half of the rentals paid under that lease. The district court concluded that Mr. Trujillo's notes and Tabet's letter to the escrow agent establishing the escrow account satisfied the statute of frauds. The district court further concluded that the parties' partial performance of the oral contract rendered the statute of frauds inapplicable. Finally, the district court concluded that the parties' oral contract had been unilaterally and unlawfully terminated by Tabet. The district court entered judgment in Bosque's favor in the amount of one-half the rents that had been collected but not paid over. It also directed that any future rentals be equally divided between the parties. Tabet appeals from this judgment.

Two points are made by Tabet on appeal. First, Tabet contends that the district court lacked jurisdiction to hear the merits of the case. Second, Tabet argues that recovery under the alleged oral contract is barred by the statute of frauds.

■ Tabet maintains that under the Real Estate Brokers and Salesmen Act, §§ 61–29–1 to –29 (Repl.Pamp.1983 and Cum. Supp.1987) (the Act), Mr. Trujillo cannot recover compensation because he was not a licensed real estate broker within the meaning of the Act at the time the lease was executed. Section 61–29–2 (Repl.Pamp. 1983) states:

A. A real estate broker within the meaning of Sections 61–29–1 through 61–29–29 NMSA 1978 is a person, business association or corporation, who for a salary, fee, commission or valuable consideration lists, sells or offers for sale, buys or offers to buy, or negotiates the purchase or sale or exchange of real estate, or who leases or offers to lease, or rents or offers for rent, or auctions or offers or attempts or agrees to auction real estate * * * * The term "real estate" as used in Sections 61–29–1 through 61–29–29 NMSA 1978 shall include leaseholds and other interest less than leaseholds.

Further, Section 61–29–16 (Repl.Pamp. 1983) of the Act states in pertinent part:

No action for the collection of commission or compensation earned by any person as a real estate broker or salesman required to be licensed under the provisions of this act shall be maintained in the courts of the state unless such person was a duly licensed broker or salesman at the time the alleged cause of action arose.

In *Lakeview Invs., Inc. v. Alamogordo Lake Village, Inc.,* 86 N.M. 151, 520 P.2d 1096 (1974), this court analyzed the virtually identical predecessor to Section 61–29–16 for the first time. The holding was unequivocal: in order to satisfy the requirements of Section 61–29–16 as against a motion to dismiss, the party seeking relief must allege that he was licensed at the time the work or service was performed.

In this case, Mr. Trujillo negotiated the lease between Hacienda and Tabet in October of 1981. Mr. Trujillo did not become a licensed real estate broker until approximately June or August of 1983. Clearly then, according to Section 61–29–16 and the *Lakeview* opinion, Mr. Trujillo cannot main-

tain an action for compensation against Tabet.

While it is undisputed that Mr. Trujillo was not a licensed broker when he negotiated the lease between Hacienda and Tabet, Mr. Trujillo claims that he falls within an exception to the Act in that he was acting as an owner or lessor. Subsection D of Section 61–29–2 (Repl.Pamp.1983) provides:

D. The provisions of Sections 61–29–1 through 61–29–29 NMSA 1978 shall not apply to any person, business association or corporation, who as owner or lessor shall perform any of the aforesaid with reference to property owned or leased by them or to the regular employees thereof, with respect to the property so owned or leased, where such acts are performed in the regular course of, or as incident to, the management of such property and the investments therein * * * *

We do not find Mr. Trujillo's argument persuasive. The lease signed on January 6, 1982, was between Tabet as landlord and Hacienda as tenant. Neither the Trujillos nor Bosque were parties to the lease. Further, we are not convinced that the lease negotiated by Mr. Trujillo was performed in the regular course of management of the property as required by Subsection D.

Since we hold that Mr. Trujillo's activities did not fall within the exception provided for in Subsection D, we hold that the district court lacked subject matter jurisdiction over this case as Bosque's complaint failed to state a cause of action upon which relief could be granted. Upon this basis alone, therefore, we would reverse the district court judgment.

■ Tabet next maintains that Bosque's recovery is barred by the statute of frauds, specifically, NMSA 1978, Section 47–1–45 and the statute of frauds requirement stated in *Pitek v. McGuire*, 51 N.M. 364, 184 P.2d 647 (1947).

Section 47–1–45 states:

Any agreement entered into subsequent to the first day of July, 1949, authorizing or employing an agent or broker to purchase or sell lands, tenements or hereditaments or any interest in or concerning them, for a commission or other compensation, shall be void unless the agreement, or some memorandum or note thereof shall be in writing and signed by the person to be charged therewith, or some other person thereunto by him lawfully authorized. No such agreement or employment shall be considered exclusive unless specifically so stated therein.

This court in *Pitek* stated: "To satisfy the statute of frauds the contract itself must be in writing; or if verbal, then there must have been some writing subsequently made however informal, stating each of its essential elements, signed by the person to be charged, or by his authorized agent acting for him." *Pitek v. McGuire*, 51 N.M. 364, 371, 184 P.2d 647, 651 (1947).

Generally speaking, a memorandum in writing meets the requirements of the statute of frauds that certain contracts shall be evidenced by writing if it contains the names of the parties, the terms and conditions of the contract, and a description of the property sufficient to render it capable of identification.

*Id.* at 371, 184 P.2d at 652 (quoting 49 Am.Jur. *Statute of Frauds* § 321 (1943)). "We are of the opinion that a contract wholly oral, and within the statute of frauds, may not be proved by a writing made prior to the meeting of the minds of the parties." *Id.* at 374, 184 P.2d at 654.

But this does not necessarily mean that a sufficient memorandum may not consist partially of writing made prior to the making of the oral agreement. If such prior writings are referred to in, and thereby made a part of, a memorandum or writing subsequently made so it can be said that the prior writings are incorporated therein, it is not objectionable on that account.

*Id.* at 374, 184 P.2d at 654. "A memorandum may consist of several writings, such as letters, telegrams, etc. (Restatement of Law of Contracts, Sec. 208), but it is a general rule that collateral papers must be referred to in the faulty memorandum itself before they can become a part of it."

*Id.* at 375, 184 P.2d at 654. *See also Balboa Constr. Co. v. Golden,* 97 N.M. 299, 639 P.2d 586 (Ct.App.1981).

In the case before us, Mr. Trujillo testified that he prepared proposal notes *prior to* the meeting with Tabet. Not only were these notes made prior to any possible meeting of the minds, but they also are undated, unsigned by the party to be charged, and do not contain a description of the property at issue. Nor does the January 8, 1982 escrow letter from Tabet to the escrow agent satisfy the statute of frauds as it neither contains all the essential elements of the oral agreement, nor does it refer to any prior or collateral document which does satisfy the statute of frauds. In light of this evidence, we are of the opinion that the memoranda did not satisfy the statute of frauds and that Bosque's recovery is thus barred.

Finally, Bosque seeks to escape the statute of frauds by arguing that Tabet partially performed the contract when it paid one-half of the Hacienda rentals to Bosque up to June of 1984.

> As a general principle, the equitable doctrine of part performance is not applicable to a contract which is within the statute of frauds as one not to be performed within a year. The mere part performance of such a contract does not take it out of the operation of the statute or permit a recovery under the contract for any part of the contract remaining executory.

*Westerman v. City of Carlsbad,* 55 N.M. 550, 554, 237 P.2d 356, 358 (1951) (quoting 49 Am.Jur. *Statute of Frauds* § 497 (1943)).

> It may consequently be stated as a rule without exception that the part performance of services under a parol contract not to be performed within a year does not remove the contract from the operation of the statute of frauds, so that an action may be maintained for its breach, either by the master or servant * * * *

*Id.* at 555, 237 P.2d at 358 (quoting Annotation, *Part Performance to Take Contracts to Render Services not to be Performed Within a Year out of the Statute of Frauds,* 1916D L.R.A. 887).

We are not persuaded by Bosque's contention that the contract could have been performed in one year if Hacienda breached the lease agreement. This contention is unsupported by any legal authority and is contrary to the facts in this case. Consequently, we hold that Bosque's recovery fails under this argument also.

Our scope of review on appeal is limited to examining the record only to determine if there is substantial evidence to support the district court's ruling. *Brannock v. Brannock,* 104 N.M. 385, 387, 722 P.2d 636, 638 (1986); *see also Toltec Int'l, Inc. v. Village of Ruidoso,* 95 N.M. 82, 84, 619 P.2d 186, 188 (1980). In this case, we cannot find substantial evidence to support the district court's judgment. We therefore reverse and remand this cause to the district court with instructions to dismiss the complaint.

IT IS SO ORDERED.

SOSA, Senior Justice, and WALTERS, J., concur.