265 P.2d 346

**KEIRSEY v. HIRSCH et al.**

No. 5545.

Supreme Court of New Mexico.

Dec. 2, 1953.

Rehearing Denied Jan. 27, 1954.

C. C. Davidson, Tucumcari, Manford Rainwater, Tucumcari, Gilbert, White & Gilbert, Santa Fe, for appellants Skinner and Clavel.

C. E. McGinnis, Springer, John B. Wright, Raton, for appellant Hirsch.

Adolf J. Krehbiel, Clayton, Robert A. Morrow, Raton, for appellee.

SEYMOUR, Justice.

Plaintiff below, C. L. Keirsey, appellee, brought suit seeking specific performance of an alleged contract to purchase from the defendant and appellant, Viola R. Hirsch, 600 acres of land located in Harding County, New Mexico. Also parties defendant to the original suit and appellants in this Court are J. T. Skinner and Bernice Clavel, administratrix, to whom the defendant, Viola R. Hirsch, deeded the property involved subsequent· to her alleged contract with the plaintiff Keirsey. In addition to specific performance, the plaintiff prays for the cancellation of the deeds from the defendant Hirsch to the defendants Skinner and Clavel, and further seeks an abatement of the purchase price based upon seller's failure to convey mineral rights under one 160-acre tract, together with damages for the loss of the use of the premises.

Defendant Hirsch, the seller, defends upon two grounds: (1) That the alleged contract of sale to Keirsey included only property actually owned by the defendant Hirsch, i. e., did not include minerals re-

served in Government Patent. (2) That the plaintiff Keirsey offered to buy surface and mineral rights, while the defendant Hirsch agreed to sell only surface and such minerals as she might have; that there was no meeting of the minds and, therefore, no contract.

The defendants Skinner and Clavel defend on the grounds: (1) That there was no contract. (2) That, if there were a contract, it was unenforceable by reason of the statute of frauds. (3) That the court was without jurisdiction by reason of the lack of indispensable parties, namely, the heirs of the original plaintiff, C. L. Keirsey, who died during the lawsuit. The action was revived in the name of his administratrix and the suit prosecuted to this point by her.

The trial court in its decree held that there was a valid contract between the plaintiff Keirsey and the defendant Hirsch; that plaintiff, the administratrix of the estate of C. L. Keirsey, deceased, was entitled to a diminution of the agreed purchase price in the amount of $80 for the missing mineral interest and in the amount of $1,950 damages for loss of possession; that the Citizens State Bank, a nominal party defendant, deliver to plaintiff a warranty deed, the original warranty deed from defendant Hirsch to C. L. Keirsey; that the deeds from Hirsch to Skinner and Clavel be cancelled; and that Skinner and Clavel turn possession of the lands over to the plaintiff administratrix, all conditioned, of course, upon the payment by plaintiff of the balance of the agreed purchase price.

The first question for determination is whether or not there was a binding contract between C. L. Keirsey, the original plaintiff, and the defendant, Viola R. Hirsch. In this regard, the trial court found as a fact:

"In October 1944, C. L. Keirsey contracted to buy of defendant Viola R. Hirsch and she in turn contracted to sell to C. L. Keirsey the above described 600 acres of land and real estate. The terms of their contract were: C. L. Keirsey was to pay $8.00 per acre for said land, or the total sum of $4800.00; Viola R. Hirsch agreed to furnish C. L. Keirsey an abstract of title for examination, which abstract was to reflect in defendant Hirsch a good and marketable fee simple title to all of said real estate, including minerals. It was further agreed $500.00 of the purchase price was to be deposited forthwith in escrow with Citizens State Bank, Roy, New Mexico, upon defendant Hirsch depositing with said escrowee bank her general warranty deed conveying the above land and real estate to said C. L. Keirsey. Upon approval of the title by at-

torney for Keirsey he was to pay over to the escrowee the balance of the agreed purchase price and thereupon the escrowee was to remit the entire $4800.00 to defendant Hirsch and in turn deliver to C. L. Keirsey her deed of conveyance."

The problem here is whether or not there was any substantial evidence which would justify the trial court in making this finding. In our judgment there was such evidence in the following exhibits introduced at trial; these exhibits were admitted in evidence without objection by any of the parties except for the first letter quoted, and there was no error assigned by reason of the rule of the court on that exhibit. For a better understanding of these exhibits, the identity of the persons named is as follows: C. L. Keirsey is original plaintiff and purchaser; Viola Hirsch is defendant and seller; Milton H. Floersheim is a real estate agent who, on behalf of Viola Hirsch, looked for and found a purchaser; Shifrin is attorney for Viola Hirsch, the seller.

"Roy, New Mexico
October 2, 1944

"Mr. Milton H. Floersheim
Floersheim Mercantile Company
Roy, New Mexico

"Dear Mickey:

"In regard to the conversation of last Saturday afternoon, I wish to submit an offer of Forty-eight hundred dollars ($4,800.00) for the *Hurst* Place.

"Very truly yours,
s/ C. L. Keirsey
C. L. Keirsey"

"Taylor, Mayer, Shifrin & Willer
Attorneys & Counselors at Law
1245 Telephone Building (1)
Saint Louis

"Perry Post Taylor
Of Counsel
Emil Mayer
Ben L. Shifrin
Louis Shifrin
Herman Willer

"November 10, 1944

"Citizens State Bank,
Roy, New Mexico.

"Gentlemen:

"At the suggestion of Mr. Milton Floersheim enclosed find Warranty Deed executed by Mrs. Viola Hirsch conveying property which she owns in New Mexico containing 600 acres, which Deed is sent to you with the distinct understanding that it is to be delivered only upon the receipt from Mr. C. L. Keirsey of the sum of $4800.00.

"Mr. Floersheim informs us that upon receipt by you of the enclosed Deed Mr. Keirsey will immediately deposit $500.00 as earnest money and that as soon as his attorney approves the Abstract of Title he will pay you the difference, to-wit: $4300.-

·00 at which time you have our authority to deliver the Deed to him, or his repre-sentatives.

"We understand that there will be a ·charge of $2.00 by your Bank for the handling of these papers and it is agreeable to us that it be deducted from the $4800.00, which we shall expect to be mailed to us ·shortly after it is received by you. As we understand from Mr. Floersheim he will pay the cost of bringing up to date the Abstract and he will also pay the 1944 tax-·es up to the date of closing this deal, both ·of which items he will repay to himself ·out of the rent of $300.00 which he is to ·receive from Mr. Sandoval.

"We are sending this letter by registered mail and would appreciate your acknowl-·edging receipt of same so that we shall know that the conditions contained in this letter have been accepted by you.

"Very truly yours,

Taylor, Mayer, Shifrin & Willer

By s/ Louis Shifrin

·"LS:mf

Enc.

Registered: Return Receipt Requested."

(Postal Card containing the following):

·"This Side of Card is for Address (U. S. 1¢ Postage Stamp)

Taylor, Mayer, Shifrin & Willer ,

1245 Telephone Building

·St. Louis, (1) Missouri"

(On the other side, the following infor-mation):

"Copy (in pencil notation)

Roy, New Mexico November 16, 1944

"Gentlemen:

"Your letter dated Nov. 10th, with War-ranty Deed enclosed, has been received. Mr. Keirsey and Mr. Floersheim have been notified.

"Your instructions will be followed (In pencil, the following):

"Yours very truly,

L. E.—D.—Mgr.

Roy Agency."

"Taylor, Mayer, Shifrin & Willer

Attorneys & Counselors at Law

1245 Telephone Building (1)

Saint Louis

"Perry Post Taylor

Of Counsel

Emil Mayer

Ben L. Shifrin

Louis Shifrin

Herman Willer

"January 10, 1945

"Mr. Mickey Floersheim,

Drawer C.

Roy, Harding County, New Mexico

"Dear Sir:

"Mrs. Hirsch was in and left the New Warranty Deed which you sent to us prop-erly signed and acknowledged. We, there-fore, are returning it to you, together with

abstract of Title No. 15 containing 48 pages and compiled and certified by the Harding County Abstract Company, Mosquero, New Mexico, covering the following described property:

" 'Lot one and the northeast quarter of the northwest quarter of Section eighteen in Township twenty-one North of Range twenty-nine—and the east half of the northeast quarter of Section thirteen in Township twenty-one North of Range twenty-eight East, N.M.P.M.'

"This Abstract and Warranty Deed is being sent to you to complete the transaction under the terms and conditions of our last letter to you wherein we went a Warranty Deed also executed by Mrs. Hirsch. Kindly acknowledge receipt of same and oblige.

"Very truly yours,
Taylor, Mayer, Shifrin & Willer
By s/ Louis Shifrin
"LS:mf—Enc."

It is to be noted that the warranty deed mentioned in the foregoing letter was executed by defendant Hirsch before a notary public, correctly described the property involved, named C. L. Keirsey as grantee, and recited the exact consideration of $4,800.

The foregoing correspondence, together with the deposit by the original plaintiff, C. L. Keirsey, of $500 earnest money with the bank, coupled with the delivery of warranty deed and abstracts to Keirsey's attorney for examination, are, in the opinion of this Court, more than sufficient to sustain the finding of the trial court to the effect that a binding contract was consummated between C. L. Keirsey and Viola R. Hirsch.

We find no merit in the contention of the defendant Hirsch to the effect that there was no meeting of the minds since she was not in reality the owner of the minerals under 160 acres. It is well settled that a contract by seller to furnish warranty deed and abstract of title carries an implied agreement that the title shall. be marketable. See Hugh K. Gale Post No. 2182, V. of F. W., of Farmington v. Norris, 1949, 53 N.M. 58, 201 P.2d 777; Patton on Titles, Ch. 2, sec. 30, p. 145; Williston on Contracts, Rev.Ed., Vol. 4, sec. 923, p. 2582. It is further settled that a mineral reservation is a reservation of a portion of the fee title to the real estate. Duvall v. Stone, 1949, 54 N.M. 27, 213 P.2d 212. It is apparent from the record that the defendant Hirsch was unaware of the fact that she did not own the minerals in question; this was first discovered by attorney for purchaser in examination of abstracts; and further evidence of her agreement to convey the same is apparent in her execution and delivery to attorney for purchaser of a warranty deed describing the specific property which ultimately was found to carry no minerals with it.

That deed, over her signature, carried the customary warranty:

"* * * And the said party of the first part (Viola R. Hirsch) * * * doth covenant * * * and agree to and with the party of the second part (C. L. Keirsey), his heirs, executors, administrators * * * that at the time of the ensealing and delivery of these presents she is well seized of the premises above conveyed as of a good, sure, perfect and indefeasible estate of inheritance in law in fee simple * * * that the same are free and clear from all former and other grants, bargains, sales, liens, taxes, assessments and incumbrances, of what kind or nature soever * * *."

The question of whether there was a contract between Viola R. Hirsch and C. L. Keirsey is separate and distinct from the question of whether that contract was enforceable under the statute of frauds. It is unnecessary for this Court to consider the defense of the statute of frauds. Under Section 19–101(8) (c), 1941 Comp., it is provided that the defense of the statute of frauds shall be plead affirmatively. The only mention of the statute of frauds during the trial of this case was a chiding remark by the court: "There is such a thing as the statute of frauds." No amendment was made or sought by the parties; no findings of fact or conclusions of law were submitted to the court by the defendants Skinner and Clavel based upon the defense of the statute of frauds. Finally, the findings and conclusions adopted by the trial court and its decree are devoid of any holding based upon the statute of frauds; there is no indication in the findings, conclusions, and decree of the court, as to whether the contract therein sustained was written or oral. In order to allow parties to adequately prepare and try a case there must be some limitation on the flexibility of our rules of amendment. Under the circumstances of this particular case in which plaintiff's complaint disclosed with considerable detail the basis of his claim, we are of the opinion, and so hold, that the statute of frauds cannot be asserted for the first time in this Court as a defense to plaintiff's complaint.

We have said that it is unnecessary to consider the defense of the statute of frauds. On the other hand, the disposition made of this case upon the point and grounds hereinafter stated is such that the exact question may be raised before this Court in subsequent litigation. While we are conscious of the fact that the record in future litigation necessarily must stand alone, it might serve the parties to have at least an expression of opinion by this Court on the questions that would be raised by the defense of the statute of frauds if properly pleaded. The written exhibits appearing in the present record exceed 50 in

number and it is difficult to suppose that much of the available evidence has been omitted.

■ The statute of frauds is intended to protect against fraud; it is not intended as an escape route for persons seeking to avoid obligations undertaken by or imposed upon them.

The trial court found that there was a contract, and this finding has been sustained on the ground that substantial evidence supported such finding. The trial court did not say whether it found a written or an oral contract. If the contract were written, there could be no question of the statute of frauds. Justice Brice, in Pitek v. McGuire, 1947, 51 N.M. 364, 184 P.2d 647, 653, 1 A.L.R.2d 830, states:

"There is a difference between a contract in writing and a memorandum of a parol contract as contemplated by the statute of frauds. The former may be made up of letters and telegrams or any other character of writing or writings, which together will constitute a contract, or it may be a formal contract. * * *"

Corbin on Contracts, Vol. 1, sec. 31, p. 88, in discussing written contracts made up of "letters and telegrams or any other character of writing or writings," states:

"* * * Here, the proof of the contract consists chiefly in a series of documents, more or less informal in character, no one of which would be legally operative standing alone. This proof is written proof; and the contract may properly be described as a written contract, even though there are several writings that the parties have never physically attached to each other."

■ The number of written exhibits here in evidence, together with the number of different people executing them, tend in this case to obscure the few that are vital. Those few create a binding written contract. First, there is the written offer to purchase signed by C. L. Keirsey, dated October 2, 1944, stating a price of $4,800; the fact that it was addressed to Milton Floersheim is immaterial so long as it was communicated to Viola R. Hirsch. Her subsequent execution of the warranty deed makes the fact of communication obvious. Second, there is the warranty deed dated December 30, 1944 (substituted for an earlier defective deed), executed before a notary public, naming Keirsey as grantee, correctly and specifically describing the 600 acres involved and reciting the exact consideration of $4,800, which deed and the abstracts were submitted on behalf of Viola R. Hirsch to Keirsey's attorney for examination. Corbin on Contracts, Vol. 1, sec. 67, p. 210, in discussing acceptance and notice thereof, states:

"* * * If the overt act is one that clearly expresses an intention to accept the specific offer and is in fact known by the offeror, there is an effective acceptance. * * *"

We consider the execution and delivery to purchaser's attorney of the warranty deed for examination such an acceptance. Both the offer and acceptance are in writing, and together constitute a written contract.

This conclusion is not in conflict with the following New Mexico cases which have been cited and heavily relied upon by appellants Skinner and Clavel: Carr v. Mazon Estate, Inc., 1920, 26 N.M. 308, 191 P. 137; Pitek v. McGuire, supra; Ades v. Supreme Lodge Order of Ahepa, 1947, 51 N.M. 164, 181 P.2d 161; Miera v. Miera, 1919, 25 N.M. 299, 181 P. 583. The first three of these cases deal with the statute of frauds and concern themselves with whether or not certain writings are sufficient under the statute to sustain an *oral* contract, a very different question from whether the writings themselves constitute a written contract. The case of Miera v. Miera, supra, is entirely foreign to the question here presented. While the balance of the correspondence is in evidence, largely without objection, and is completely convincing as to the meeting of the minds of the parties, and was available to the trial court in its determination of the

existence of a contract, we need not rely upon this additional correspondence to establish the written contract specified above with relation to the question of the statute of frauds.

The defendants Skinner and Clavel have raised a serious question in their contention that the trial court was without jurisdiction because the heirs of the original plaintiff, C. L. Keirsey, were indispensable parties to this suit.

■■ It is settled in New Mexico that real estate owned by a decedent descends upon his death to his heirs and not to his administrators; it is further settled that the purchaser under a real estate contract has acquired a property interest in land of such a character that it descends to his heirs and not to his administators. Mesich v. Board of County Com'rs of McKinley County, 1942, 46 N.M. 412, 129 P.2d 974; American Law of Property, Vol. III, sec. 11.26, pp. 69, 70.

■ The fact that the foregoing is true does not necessarily determine the question of indispensable parties; it does, however, clearly show the trial court to have been in error in having allowed to the plaintiff, the administratrix of the estate of C. L. Keirsey, $1,950 credit against the purchase price as damages for failure of possession. At the moment Keirsey died, assuming the Hirsch-Keirsey contract to be valid, this interest in land belonged to

the heirs and they were entitled to possession. Any damages accruing by reason of the seller's refusal to turn over possession could only belong to the heirs who were entitled to possession. The same error is apparent in that portion of the trial court's decree directing that Skinner and Clavel turn possession of the land itself over to the administratrix. Further, if the trial court's judgment in this regard were allowed to stand, the defendant Hirsch would be subject to a second independent action for damages by the heirs.

There is no question that the heirs of the deceased Keirsey are "necessary" parties as distinguished from "indispensable" parties. These heirs have interests heavily involved and for the purpose of finally determining the rights of all the parties, should be included in this suit. However, the only question of which we can take cognizance is whether or not they are indispensable parties, a jurisdictional question which can be raised at any time. Plaintiff, appellee, relies heavily upon Section 19–710, 1941 Comp.:

"Revivor on death of plaintiff.—Upon the death of the plaintiff in an action, it may be revived in the names of his representatives to whom his rights have passed; where his right has passed to his personal representatives the revivor shall be in his name; where it has passed to his heirs or devisees who could support the action if brought anew, the revivor may be in their names. (Laws 1884, ch. 5, § 10; C.L.1884, § 2147; C.L.1897, § 3096; Code 1915, § 4273; C.S.1929, § 105-1211.)"

We do not interpret the use of the word, "may," in the last sentence of this statute as having any bearing upon the question of who are and who are not indispensable parties. This statute simply permits certain individuals to take the initiative in making the litigation go forward. Bank of California, Nat. Ass'n v. Superior Court, 1940, 16 Cal.2d 516, 106 P.2d 879, 884, analyzes the difference between necessary and indispensable parties. Of necessary parties, the Court says:

"The other classification includes persons who are interested in the sense that they might possibly be affected by the decision, or whose interests in the subject matter or transaction are such that it cannot be finally and completely settled without them; but nevertheless their interests are so separable that a decree may be rendered between the parties before the court without affecting those others. * * *"

Of indispensable parties, this Court says:
"* * * There may be some persons whose interests, rights, or duties will inevitably be affected by any decree which can be rendered in the ac-

tion. * * * Where, also, the plaintiff seeks some other type of affirmative relief which, if granted, would injure or affect the interests of a third person not joined that third person is an indispensable party. * * *"

 It is our judgment that the heirs of the original plaintiff Keirsey were indispensable parties in this action. The determination of the basic issue involved in this suit, namely, the specific enforcement of a contract which will vest in those heirs legal title to the property involved clearly and inevitably affects the interests of the heirs. In this respect and in the respects mentioned above in connection with damages, the rights of the heirs of Keirsey are so closely involved that an adjudication seeking the specific performance of this contract without the heirs before the court makes the trial court's decree one which is beyond its jurisdiction. While the question is not presently before us, it is our opinion that the administratrix is also an indispensable party to this litigation by reason of her obligation to pay the purchase price. The reasoning in Mann v. Whitely, 1931, 36 N.M. 1, 6 P.2d 468, and American Trust & Savings Bank of Albuquerque v. Scobee, 1924, 29 N.M. 436, 224 P. 788, supports this conclusion.

 Defendants Skinner and Clavel have raised one further point based primarily upon the decree of the trial court providing for payment by plaintiff into escrow for the benefit of Viola R. Hirsch of the remainder of the purchase price. Since Skinner and Clavel have already paid the defendant Hirsch once for the land, it is apparent that she is not entitled to receive payment a second time. The payment, if any is made, must be, necessarily, in trust for the defendants Skinner and Clavel.

In view of the foregoing, the judgment is reversed, the cause remanded to the district court with directions to set aside its judgment, and for further proceedings in conformity with the views herein expressed.

It is so ordered.

SADLER, C. J., and McGHEE, COMPTON, and LUJAN, JJ., concur.