310 P.2d 1034

Leonard C. GINN, d/b/a Ginn Agency Realtors, Plaintiff-Appellant,

v.

Charles MacALUSO and Louise MacAluso, his wife, Defendants.

Louise MacAluso, Appellee.

No. 6120.

Supreme Court of New Mexico.

April 18, 1957.

376

McAtee, Toulouse & Marchiondo, Albuquerque, for appellant.

Rodey, Dickason, Sloan, Mims & Akin, Albuquerque, for appellee.

PER CURIAM.

Upon consideration of this appeal upon rehearing we have concluded the opinion heretofore filed in said cause should be withdrawn and the one to follow substituted in its place and stead.

SADLER, Justice.

The plaintiff as an appellant before this Court complains of the judgment of the district court of Bernalillo County in dismissing his complaint against one of two defendants in an action· brought by him in the district court of that county for the recovery of a real estate commission said to have been earned on the sale of a motel located in the city of Albuquerque.

The defendants in the action were Charles MacAluso and Louise MacAluso, his wife, owners of the motel, and the plaintiff, engaged as a real estate broker in the city of Albuquerque, claimed he had a listing of the property for sale according to its terms as per copy attached to his complaint as Exhibit "A" which he relied upon as compliance with 1953 Comp. § 70-1-43. The statute mentioned requires a writing as a condition to the recovery of a commission, or other compensation, upon the sale of real estate, signed by the party to be charged, or by some other person thereunto lawfully authorized.

But to quote the statute:

"70-1-43. Any agreement entered into subsequent to the first day of July, 1949, authorizing or employing an agent or broker to purchase or sell lands, tenements, or hereditaments or any interest in or concerning them, for a commission or other compensation, shall be void unless the agreement, or some memorandum or note thereof shall be in writing and signed by the person to be charged therewith, or some other person thereunto by him lawfully authorized. No such agreement or employment shall be consid-

ered exclusive unless specifically so stated therein."

The complaint with Exhibit "A" attached discloses that it bore the name on the listing of Charles MacAluso, alone. The wife, Louise, admitted in a deposition that she signed her husband's name to the listing but, as she said, only for purposes of identification. It was relied on, however, as binding both Charles MacAluso and Louise MacAluso, his wife. Other allegations appearing in the complaint claimed the plaintiff produced a purchaser for the property pursuant to the listing at a price agreeable to the defendants who closed a deal with the purchaser and sold him the property for $130,000, becoming bound thereby to plaintiff for an earned commission of $6,500. The motel in question was known as the Silver Spur Motel.

The defendants answered, denying the writing relied upon as a listing had any validity as such. With the issues thus drawn depositions of Louise MacAluso, one of the defendants, Leonard C. Ginn, the plaintiff, and Jerry Mottl, the purchaser, were taken on October 22, 1955, and actually filed in the case on November 14, following. In the meantime and on November 8, 1955, the defendants moved for summary judgment and following a hearing one was entered in favor of Louise MacAluso on February 28, 1956, sustaining the motion for dismissal as to her and deny-

ing the same as to the defendant, Charles MacAluso. Judgment having been entered dismissing the action with prejudice as to Louise MacAluso, the plaintiff as an appellant prosecutes this appeal for the revision and correction thereof.

Two points are relied upon by the plaintiff as appellant in this Court, as follows:

"I. The court erred in dismissing the cause of action as to defendant Louise MacAluso as the signing of the name 'Charles MacAluso', by Louise MacAluso, to the real estate listing contract was sufficient as a matter of law to satisfy the requirements of Section 70–1–43, N.M.S.A., and be binding upon her.

"II. The court erred in dismissing the cause of action as to defendant Louise MacAluso as sufficient evidence was produced from which the trier of fact could reasonably infer that defendant Louise MacAluso intended to bind herself to the real estate contract."

Counsel for the defendant, Louise MacAluso, frankly admit that if Point I, above, is ruled adversely to her they no longer would contend that she was entitled to a summary judgment. Accordingly, we shall address ourselves to the merits of plaintiff's Point I, urging the listing attached as Exhibit "A" to his complaint meets the requirements of 1953 Comp. § 70–1–43.

So it is that we must determine whether the trial court correctly ruled in sustaining the motion of defendants for summary judgment dismissing plaintiff's complaint as to the defendant, with prejudice. In resolving this question we must view the testimony in the most favorable aspect it will bear in support of the plaintiff's claim of right to go to the jury. One contesting the right bears a heavy burden. Michelson v. House, 54 N.M. 197, 218 P.2d 861, 863. As said in this case:

"A motion for summary judgment is not to be considered as a substitute for a trial and should not be granted where there is a genuine issue of material fact. Rule 56(c), our rules, Sec. 19–101(56) N.M.Stats.1941 Compilation; McLain v. Haley, 53 N.M. 327, 207 P.2d 1013; Agnew v. Libbey, 53 N.M. 56, 201 P.2d 775. Litigants are entitled to the right of trial where there is the slightest doubt as to the facts. Ramsouer v. Midland Valley Railroad Co., D.C., 44 F.Supp. 523; Whitaker v. Coleman, 5 Cir., 115 F. 2d 305."

The burden resting on one objecting to the motion is closely akin to that to be borne by a defendant seeking to sustain here a judgment entered on a verdict directed against a plaintiff when he rests in putting on his case. See, Telman v. Galles, 41 N.M. 56, 63 P.2d 1049; Paulos v. Janetakos, 41 N.M. 534, 72 P.2d 1; Lindsey v. Cranfill, 61 N.M. 228, 297 P.2d 1055, 1057. In the latter case, we said:

"Plaintiff-appellant first suggests that, since the directed verdict was sustained, the consideration of testimony put in by plaintiff before the motion was made should have every reasonable inference flowing from it and that all conflicts in the evidence should be disregarded, the action of the court resting solely upon the substantial evidence supporting plaintiff's cause of action. Plaintiff cites In re Garcia's Estate, 45 N.M. 8, 107 P.2d 866; Morrison v. First National Bank, 28 N.M. 129, 207 P. 62; Sanchez v. Torres, 35 N.M. 383, 298 P. 408; Jackson v. Gallegos, 38 N.M. 211, 30 P.2d 719; Pankey v. Hot Springs National Bank, 46 N.M. 10, 119 P.2d 636.

"We agree with plaintiff's statement as to the consideration of testimony required when ruling upon a motion for directed verdict."

What, then, on the record before us, are the facts permissibly for consideration by us in passing upon the propriety of the trial court's action in sustaining defendants' motion to dismiss the plaintiff's action with prejudice as to the defendant, Louise Mac-Aluso, wife of the defendant, Charles Mac-Aluso?

The defendants owned and operated a property in Albuquerque, known as the

Silver Spur Motel, at all times material to the present controversy. During the same period, Leonard C. Ginn, was a licensed realtor in the city of Albuquerque engaged in the business of making sales and exchanges of real property for owners, and receiving as compensation therefor an agreed commission on the sale price.

The defendants acquired the motel property in question in late July, 1954. For some years prior thereto they had bought and sold property to a considerable extent, the wife, Louise, usually taking the leading part in such sales and purchases. It was not surprising, then, to find them, soon after the purchase of this property, placing the same on the market and looking for a purchaser at an advantageous price. So it was that as early as the first month, August, after their purchase of the property, they were in contact with the plaintiff, Ginn, who held numerous conversations with them touching a sale of the motel during that month.

These meetings and conversations continued, intermittently, down to October 12, 1954, prior to which time the plaintiff had shown the motel three or four times to various prospects. Indeed, the matter of a sale by him had reached the point where, apparently, he felt he should have something a little more assuring than an oral authorization to represent them in a sale. Accordingly, on the date mentioned, he presented them a formal listing, containing the usual data, such as location, sale price, terms, etc., and asked for their signatures. On it, and as per directions from them, Charles MacAluso was given as the person to contact for showing the motel to customers. Sale price was given as $140,000.

There also appeared on the listing two forms for designation of the nature of the representation of the realtor, one and the first appearing, a "Non-exclusive Listing" and below it an "Exclusive Listing." It was when defendants were thus presented with a choice of listings that they, for the first time, divulged to plaintiff they had already given an exclusive listing to another firm of realtors in Albuquerque, namely, Jennings & Johnson.

Having been thus advised, the plaintiff dropped further interest in the matter and, for the time being, made no further efforts toward selling the property. He informed them at this time he was not disposed to have anything to do with the property so long as there was an exclusive listing outstanding. It may be worth noting, however, the defendants at the time of disclosing the fact of an exclusive agency and exhibiting the same to plaintiff, expressed doubt as to whether it was binding on them. The plaintiff suggested if they entertained doubt on that score, that the best way to find out would be to consult a lawyer.

With matters standing thus, the plaintiff displaying no further interest in the property, on January 8, 1955, Mrs. MacAluso telephoned him reporting that her husband,

one of the defendants, had suffered an operation and, due to this unforeseen expense, they were now ready to list the property for sale with the plaintiff. Accordingly, pursuant to the call, he called on defendants that day and got the listing upon which he relies as the basis of his claim for commission.

One of the first things the plaintiff inquired about upon arrival at the motel was the exclusive listing. What had happened to it? Both defendants were present at this interview and they informed him it had been cancelled. Indeed, on a prior occasion they had told him it was subject to cancellation at their option. So, now, they informed him it had been, or would be, cancelled forthwith.

The defendants were both present and agreeing he should have this listing, saying they needed the money on account of the husband's operation. The interview took place in the livingroom of defendants' quarters at the motel. The husband was still weak from the operation and, growing tired before the business was completed, left the wife and plaintiff in the livingroom and entered the bedroom, apparently, to lie down for a rest. Before doing so, however, he agreed to the granting of the listing and to having it signed by the wife. Since it becomes the basis of defendants' claim the wife is not bound, because she did not sign her name to the listing, we shall quote the testimony from the plaintiff's deposition on this precise point. It follows:

"Q. So when you said earlier that he agreed to it and left the room and went to bed, you didn't mean to testify that Mr. MacAluso said to Mrs. MacAluso, 'Mrs. MacAluso, I hereby authorize you to sign my name to the listing'? You didn't mean to say that? A. No, I mean to say he agreed to have the listing signed in any name.

"Q. He agreed to have it signed in—
A. (Interrupting) In any name that was necessary.

"Q. So when she signed the name Charles MacAluso, nobody had indicated that she had authority to do so? A. She and her husband had agreed to it.

"Q. As I understand it, the only thing you heard her husband agree to was that she might sign the listing? A. He agreed to have her sign the listing.

"Q. Yes, but he didn't agree that she might sign his name to the listing? A. I don't remember anything discussed about it. I don't remember that.

"Q. When you say that you don't remember, are you trying to suggest that that might have happened, Mr. Ginn? A. No.

"Q. You mean that it did not happen? A. I don't mean anything. I mean I don't remember any discussions about the exact signature of it.

"Q. How did she happen to sign his name rather than hers? A. You will have to ask her that.

"Q. I understand from that answer that you did not suggest that she sign his name? A. No.

"Q. After she signed his name did you object to her signing his name? A. No.

"Q. Did you ask her then for any written authority that she might have to sign his name? A. No.

"Q. Why didn't you ask her to sign her name? A. Because, as I understand it, it is just necessary to have the signature of some person on an open listing, not an exclusive listing authorizing me to show and sell the property.

"Q. That is your understanding of the law on this point? A. Yes, that is my understanding."

Following execution of the listing the plaintiff brought to the motel the prospects who later proved to be the purchasers to inspect the property. This was on January 10, 1955. He made one trip with Mr. MacAluso, alone, in the forenoon of the same day and, still another trip with both the husband and wife in the afternoon of that day. He finally succeeded in getting an offer for sale of the property from them of $117,000. This offer he conveyed to the purchasers. Later, the property was actually sold to the purchasers at that price, substantially on terms of the offer conveyed to them through the plaintiff.

At the time the deal was being closed through Jennings & Johnson, the purchaser inquired of them, "What about Ginn?", explaining it was he who first showed them the property and introduced them to the owners. They replied they could fix things up with Ginn, that they had an exclusive listing and would split the commission with him.

■ On the foregoing facts plus inferences properly deducible therefrom, we feel compelled to announce the trial court was correct in dismissing the complaint as against the defendant, Louise MacAluso. Obviously, the memorandum relied upon as fixing liability upon her fails to do so if the language of the controlling statute means anything. Its terms deny liability as against her in the circumstances disclosed by the facts. The writing was neither signed by her in her name, or by any one else thereunto duly authorized.

■ True enough, she signed the document but she did not affix her signature. Instead, she signed the name of her husband, as the defendants' testimony discloses, by his express consent and direction. If so, and the jury so finds, there can be no

382

doubt of his liability under the statute. It would be stretching the facts, or legitimate inferences to be deduced from them, much beyond any reasonable purpose or end, to conclude she intended the name of her husband, though written at his request, to bind her as well, when by adding her own name she might have removed the matter from the field of speculation.

The counsel for defendant, Louise Mac-Aluso, have reminded us upon rehearing that our original opinion on file herein over-ruled by implication the case of Ades v. Supreme Lodge of Ahepa, 51 N.M. 164, 181 P.2d 161, a conclusion the force of which it is difficult to challenge. Although, we were there dealing with the statute of frauds, the analogy between the two statutes is strong, a fact that heretofore has been commented upon. Harris v. Dunn, 55 N.M. 434, 234 P.2d 821, 27 A.L.R.2d 1277. See, also, Traub v. Nason & Childers, 57 N.M. 273, 260 P.2d 379.

In Ades v. Supreme Lodge of Ahepa, supra [51 N.M. 164, 181 P.2d 166], we said:

"Still another reason would intervene to deny validity to the memoranda as an enforceable contract under the statute of frauds, since where agent is also a purchaser along with the principal, agent's signature alone is insufficient to bind the principal. Freeman v. Fishman, supra [245 Mass. 222, 139 N.E. 846]. If, as Bruskas contends, Ades was acting as agent for him as well as for himself, he nowhere signed as agent for Bruskas."

In the case just mentioned, it is true, we were dealing with the statute of frauds but, as already shown, the analogy between the two is strong. In the Ades case the question was whether the writings sufficiently identified the plaintiff, Bruskas, as a purchaser. He was not mentioned in them, nor was he otherwise identified in the writings, as such. We held he was not identified in the writings as a purchaser. Here the writing does not purport to bind Louise MacAluso either as a principal, or as an agent. She signed in neither capacity. We think under the rationale of our opinion in the Ades case, the defendant, Louise Mac-Aluso, was properly dismissed out of the case.

This is not to say, however, that a judgment against the husband may not be satisfied out of the community of which he is the head, thus enforcing the judgment against her share therein as well as that of her husband. Compare, Davidson v. Click, 31 N.M. 543, 249 P. 100, 47 A.L.R. 1016. The only effect of the dismissal as to her is to deny satisfaction of any judgment recovered from her separate property, if any.

It follows from what has been said the judgment rendered is correct and should be affirmed and the cause remanded for fur-

ther proceedings against the defendant, Charles MacAluso, not inconsistent with the views herein expressed.

It is so ordered.

LUJAN, C. J., and McGHEE, COMPTON and KIKER, JJ., concur.